753 F.Supp.2d 1217 (2010)
NATIONAL ORGANIZATION FOR MARRIAGE, INC., Plaintiff,
v.
Dawn ROBERTS, in her official capacity as Florida Secretary of State, et al., Defendants.
Case No. 1:10cv192-SPM/GRJ.
United States District Court, N.D. Florida, Gainesville Division.
November 8, 2010.
*1218 James Bopp, Jr., Randy Elf, James Madison Center for Free Speech, Terre Haute, IN, Mathew D. Staver, Liberty Counsel, Maitland, FL, Horatio G. Mihet, Liberty Counsel, Orlando, FL, for Plaintiff.
Charles B. Upton, II, Florida Department of State, Jonathan Alan Glogau, Tallahassee, FL, for Defendants.

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
STEPHAN P. MICKLE, Chief Judge.
The National Organization for Marriage, Inc., (NOM) is an organization that planned to air television and radio ads and to send out direct mail targeting candidates for the November election in Florida. NOM does not wish to comply with Florida's electioneering communications laws, which require disclosure of information to provide voters with knowledge of who is speaking about a candidate shortly before an election. NOM contends that the laws, facially and as applied to them, are unconstitutional. NOM has filed a motion for preliminary injunction to prohibit enforcement.
Although the election has since passed, the issues raised by NOM are not moot since they are capable of repetition, yet evading review. FEC v. Wis. Right to Life, Inc., 551 U.S. 449, 462-63, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007). For the following reasons, the Court finds that NOM's constitutional challenges to the Florida laws are not likely to succeed and therefore the preliminary injunction must be denied.

Standard for Preliminary Injunction
To obtain a preliminary injunction, a plaintiff has the burden to demonstrate (1) a substantial likelihood of success on the merits, (2) irreparable injury if the injunction were not granted, (3) that the threatened injury outweighs any harm an injunction may cause the defendant, and (4) that granting the injunction will not be adverse to the public interest. Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1246-47 (11th Cir.2002). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the `burden of persuasion' as to the four requisites." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). If the Court finds that the movant has failed on any one of the requisites, the preliminary injunction must be denied. United States v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir.1983).

*1219 Challenged Laws
NOM is challenging the constitutionality for three Florida statutes: sections 106.011(19), 106.011(18)(a), and 106.03(1)(b). These statutes provide:
(19) "Electioneering communications organization" means any group, other than a political party, political committee, or committee of continuous existence, whose election-related activities are limited to making expenditures for electioneering communications or accepting contributions for the purpose of making electioneering communications and whose activities would not otherwise require the group to register as a political party, political committee, or committee of continuous existence under this chapter.
(18) (a) "Electioneering communication" means any communication that is publicly distributed by a television station, radio station, cable television system, satellite system, newspaper, magazine, direct mail, or telephone and that:
1. Refers to or depicts a clearly identified candidate for office without expressly advocating the election or defeat of a candidate but that is susceptible of no reasonable interpretation other than an appeal to vote for or against a specific candidate;
2. Is made within 30 days before a primary or special primary election or 60 days before any other election for the office sought by the candidate; and
3. Is targeted to the relevant electorate in the geographic area the candidate would represent if elected.
(b) 1. Each electioneering communications organization that receives contributions or makes expenditures during a calendar year in an aggregate amount exceeding $5,000 shall file a statement of organization as provided in subparagraph 2. by expedited delivery within 24 hours after its organization or, if later, within 24 hours after the date on which it receives contributions or makes expenditures for an electioneering communication in excess of $5,000.
These statutes do not prohibit NOM from engaging in its planned election communications, but NOM contends that it would be required to comply with the statutes' disclosure requirements such that the speech "would simply not be worth it for NOM." Doc. 1 at ¶ 21. NOM does not challenge the disclosure requirements themselves, which are found in various other sections.[1] Instead, NOM contends that the definitions for electioneering communications organization and electioneering communication are overbroad and vague because they are driven by the "appeal to vote" test. NOM also contends that the challenged statutes fail strict scrutiny and should not apply to NOM because its major purpose is not the election of a candidate.

Appeal to Vote Test
The "appeal to vote" test comes from the United States Supreme Court in Federal Election Commission v. Wisconsin Right to Life, Inc., 551 U.S. 449, 469-70, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007) (WRTL). The Court recognized the competing government interests at stake when regulating election communications. WRTL at 469, 127 S.Ct. 2652. While the government must have the ability to regulate elections to protect the public from being misled and to prevent corruption, public debate on issues is essential to our system of government and thus protected *1220 by the First Amendment. Id.; Buckley v. Valeo, 424 U.S. 1, 26, 45, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).
To remain faithful to both interests, the United States Supreme Court has recognized the government's ability to regulate election communications, but limited the authority to communications that are unambiguously campaign related. Id. at 80, 96 S.Ct. 612 Such communications fall into two categories. The first is "express advocacy," which refers to communications with explicit words expressly advocating for or against a candidate's election, such as "vote for" or "vote against." Buckley, at 43-44 and n. 52, 96 S.Ct. 612. The express advocacy test provides a bright line to ensure regulations remain within the realm of election activities and do not restrict ordinary debate on issues (often referred to as issue advocacy), which is protected by the First Amendment. Id. The express advocacy test, however, is not the constitutional boundary for the regulation of elections communications. (McConnell v. FEC, 540 U.S. 93, 190-192, 124 S.Ct. 619, 157 L.Ed.2d 491); WRTL, 551 U.S. at 474 n. 7, 127 S.Ct. 2652.
Beyond the express advocacy test, the Court has also recognized a need to regulate communications that do not contain the precise words that constitute express advocacy but yet are "susceptible of no reasonable interpretation other than an appeal to vote for or against a specific candidate." WRTL, 551 U.S. at 469-470, 127 S.Ct. 2652. Known as the "appeal to vote" test, the State of Florida has adopted this standard for its electioneering communication statutes.
NOM argues that the appeal to vote test was abolished by the United States Supreme Court in Citizens United v. FEC, ___ U.S. ___, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). A careful reading of Citizens United, however, shows otherwise. In Citizens United, the Court specifically overruled Austin v. Michigan Chamber of Commerce, 494 U.S. 652, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990), which allowed political speech to be banned based on the speaker's corporate identity. The Court also overruled the portion of McConnell v. FEC, 540 U.S. 93, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003) that upheld restrictions on corporate expenditures. Citizens United, 130 S.Ct. at 913. The Court did not abolish the appeal to vote test established in WRTL.
In fact, the Court in Citizens recognized that the appeal to vote test is objective. Id. at 889, 895. The Court applied the test and found that the communication at issue (Hillary: The Movie) was the functional equivalent of express advocacy because it was susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate. Id. at 890.
The portion of Citizens United that NOM claims rejected the appeal to vote test was actually a criticism of the Federal Election Commission's regulatory scheme, which established a "two-part, 11-factor balancing test to implement WRTL's ruling." Id. at 895-96. The Court found that the FEC's regulations were "complex" and "onerous" and "precisely what WRTL sought to avoid." Id. at 896.
Far from overruling WRTL, the Court embraced a straight forward application of the appeal to vote test. Florida has included the exact same language in its electioneering communications statutes.

Challenge for Vagueness and Overbreadth
NOM makes no real argument that the Florida statutes are vague in application to NOM's proposed communications. Moreover, from a cursory review it appears that NOM's communications meet the "appeal to vote" test because they were planned to take place just prior to the election, name a specific candidate, state that the candidate *1221 is running for office, target the geographic area the candidate would represent, state the candidate's view on the issue, laud or condemn the view, state whether the candidate is "good" or "bad" for Floridians, and then exhort constituents to action by telling them to call the candidate. These characteristics separate NOM's communications from true issue advocacy. See WRTL, 551 U.S. 449, 470 & n. 7, 127 S.Ct. 2652; McConnell, 540 U.S. at 126-27, 124 S.Ct. 619.
Normally, when a statute as applied to a plaintiff's conduct is not vague, the plaintiff cannot challenge the statute as impermissibly vague on its face based on other possible applications. United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). In the First Amendment context, however, sometimes the challenge is permitted. Id. A law can be voided for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." Id.
To raise a successful facial challenge, a plaintiff has the burden to show that the law "can never be applied in a valid manner" and that "every application of the statute creates an impermissible risk of suppression of ideas." New York State Club Ass'n, Inc. v. New York, 487 U.S. 1, 11, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988). "[P]erfect language and precise guidance have never been required even of regulations that restrict expressive activity'." Id. (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)). What is important is that a statute avoid "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meaning." Id. . .
The "appeal to vote" test adopted by Florida is not void for vagueness. It provides an objective standard that was created and applied by the Untied States Supreme Court. WRTL, 551 U.S. at 470, 476, 127 S.Ct. 2652; Citizens United, 130 S.Ct. at 889-90, 895. Under its plain terms, a communication must be "susceptible of no reasonable interpretation other than an appeal to vote for or against a specific candidate" to qualify as an electioneering communication that is regulated under Florida law. § 106.011(18)(a), Fla. Stat. The fact that "it may be difficult in some cases to determine whether these clear requirements have been met" does not mean that the statute is void for vagueness. Williams at 306, 128 S.Ct. 1830. Even the Supreme Court has recognized the difficulty in distinguishing true issue advocacy from election advocacy targeting candidates. WRTL, 551 U.S. at 474, 127 S.Ct. 2652. While "the distinction. . . may often dissolve in practical application," Id. (quoting Buckley, 424 U.S. at 42, 96 S.Ct. 612), the appeal to vote test, was carefully crafted to avoid this problem by being simple in its terms and giving the benefit of the doubt to protecting speech. Id. at 469-70, 473-74 and n. 7. NOM has failed to demonstrate that the test is facially vague.
Even though it is not vague, a statute may be unconstitutionally overbroad if "in its reach it prohibits constitutionally protected conduct." Grayned v. City of Rockford, 408 U.S. 104, 114, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). A law is facially overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." United States v. Stevens, ___ U.S. ___, ___, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010).
In this case, NOM's overbreadth challenge fails based on the holdings in McConnell and WRTL. McConnell rejected a facial overbreadth challenge to *1222 regulations that targeted the functional equivalent of express advocacy. McConnell, 540 U.S. at 206-07, 124 S.Ct. 619. And WRTL further refined what the functional equivalent of express advocacy is by establishing the "appeal to vote" test. WRTL, 551 U.S. at 469-470, 127 S.Ct. 2652. As discussed above, the test was specifically designed to avoid restriction of protected speech by erring on the side of the speaker in close calls. WRTL, 551 U.S. at 474, 127 S.Ct. 2652 ("[T]he tie goes to the speaker."). The appeal to vote test does not substantially restrict protected speech and is therefore not overboard.

Strict Scrutiny and Major Purpose
Although NOM is not challenging the disclosure requirements imposed by the Florida electioneering communications statutes., NOM contends nevertheless that it cannot be subject any disclosure requirements because NOM's major purpose is not the election of a candidate and because the statutes fail strict scrutiny. NOM's arguments are unlikely to succeed because neither the major purpose requirement nor strict scrutiny apply.
The Florida statutes being challenged would not prohibit NOM from engaging in its proposed speech. Thus, instead of strict scrutiny, a standard known as "exacting scrutiny" applies. Citizens United, 130 S.Ct. at 914. Under exacting scrutiny, there must be "a `substantial relation' between the disclosure requirement and a `sufficiently important' governmental interest." Id. (quoting Buckley 424 U.S. at 64, 96 S.Ct. 612).
There is no major purpose requirement because the statutes do not impose fullfledged political-committee like burdens upon NOM, and the limited burdens imposed are triggered only by communications that are unambiguously campaign related. Indeed the touchstone for imposing any election regulation that affects speech is that it must be unambiguously campaign related. Buckley, 424 U.S. at 79-81, 96 S.Ct. 612. Under federal campaign finance statutes that impose regulations based on political committee status, the Court has required that the committees be under the control of a candidate or have as its "major purpose" the nomination or election of a candidate to ensure that the communications being regulated are unambiguously campaign related. Id. at 79, 96 S.Ct. 612. When political committee status is not the trigger point for regulation, the Court has recognized that regulation is permissible for communications that are unambiguously campaign related, which includes express advocacy (Id. at 80, 96 S.Ct. 612) and the functional equivalent (McConnell, 540 U.S. at 191-92, 124 S.Ct. 619; WRTL, 551 U.S. at 465, 127 S.Ct. 2652).
In this case, political committee status and burdens akin to those under the federal statutes are not at issue. So the major purpose test is not applicable. Under the Florida statutes, the trigger point for disclosure is speech that is an "appeal to vote" under the WRTL, and thus unambiguously campaign related. Requiring disclosure for such speech satisfies the exacting scrutiny test. Buckley, 424 U.S. at 81, 96 S.Ct. 612. The government has a sufficiently important interest to "increase the fund of information concerning those who support [a] candidate . . . [and] shed the light of publicity on spending." Id. Imposing a disclosure requirement, as Florida has done, is substantially related to that interest. Id.

Conclusion
NOM has failed to demonstrate a substantial likelihood of success on its arguments that the challenged statutes are constitutionally infirm. The "appeal to vote" test adopted by Florida is not vague or overbroad. Neither the "major purpose" requirement nor strict scrutiny is *1223 applicable. The Florida statutes at issue pass exacting scrutiny because there is a substantial relation between the disclosure requirements and a sufficiently important governmental interest. Accordingly, it is
ORDERED AND ADJUDGED: the motion for preliminary injunction (doc. 3) is denied.
NOTES
[1] See sections 106.0703 and 106.03, Florida Statutes, which impose registration, record-keeping, and reporting requirements.