**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 25, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FREE SPEECH,

       Plaintiff - Appellant,

v.

FEDERAL ELECTION COMMISSION,

       Defendant - Appellee.

No. 13-8033

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. NO. 2:12-CV-00127-SWS)**

---

Benjamin T. Barr, Rockville, Maryland (Stephen Klein, Wyoming Liberty Group, Cheyenne, Wyoming and Jack Speight, Cheyenne, Wyoming, with him on the briefs), for Plaintiff-Appellant..

Kevin Deeley, Acting Associate General Counsel (Anthony Herman, General Counsel, Lisa J. Stevenson, Deputy General Counsel-Law, Erin Chlopak, Acting Assistant General Counsel, David Kolker, Associate General Counsel and Adav Noti, Acting Assistant General Counsel, with him on the briefs), Federal Election Commission, Washington, D.C., for Defendant-Appellee.

Fred Wertheimer, Democracy 21, Washington, D.C.; Donald J. Simon, Sonosky, Chambers, Sachse, Endreson & Perry, LLP, Washington, D.C.; J. Gerald Hebert, Tara Malloy and Paul S. Ryan, The Campaign Legal Center, Washington, D.C.; and Larry B. Jones, Simpson, Kepler & Edwards, LLC, The Cody, Wyoming Division of Burg Simpson Eldredge Hersh & Jardine, P.C., Cody, Wyoming, on the Briefs for Amici Curiae.

---

Before **BRISCOE**, Chief Judge, **BRORBY**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

Plaintiff-Appellant, Free Speech, appeals the district court's dismissal of the complaint it filed in July 2012, alleging certain regulations and practices of Defendant-Appellee, the Federal Election Commission ("FEC"), violate its rights under the First Amendment. After careful review of the appellate filings, the district court's order, and the entire record, we **affirm** the dismissal for substantially the reasons stated by the district court.

The district court correctly concluded Free Speech's claims implicate only disclosure requirements which are subject to exacting scrutiny, requiring "a substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 366-67 (2010) (quotations omitted). Further, the district court comprehensively analyzed and correctly resolved Free Speech's constitutional challenges to the FEC's definition of express advocacy, codified at 11 C.F.R. § 100.22(b); the standard used by the FEC to determine whether a request for funds is a solicitation of contributions under 2 U.S.C. § 441d(a); and the FEC's policy of determining political committee status on a case-by-case basis.[1]

---

[1]The district court relied, *inter alia*, on the Fourth Circuit's decision in *Real Truth About Abortion, Inc. v. Federal Election Commission*, 681 F.3d 544 (4th
(continued...)

-2-

Accordingly, this court **adopts** the district court's analysis as the opinion of this

court and **orders** the district court's memorandum decision and order granting the

FEC's Motion to Dismiss to be published.

---

[1](...continued)
Cir. 2010).  Free Speech argues that dismissal of its complaint for failure to state a claim was improper because the record in this matter is more fully developed than the record analyzed by the Fourth Circuit, thereby providing factual support for its assertions the FEC's regulations and policies are either onerous and burdensome, inconsistent and contradictory, or somehow different from the ones it publically adopts or articulates.  We have reviewed the record and conclude nothing therein provides any factual support for these conclusory assertions.

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2013 MAR 19 PM 3 53

STEPHAN HARRIS, CLERK
CASPER

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

FREE SPEECH,

Plaintiff,

vs.

FEDERAL ELECTION COMMISSION,

Defendant.

Case No. 12-CV-127-S

---

## ORDER GRANTING FEDERAL ELECTION COMMISSION'S MOTION TO DISMISS

---

This matter comes before the Court on Defendant Federal Election Commission's ("FEC" or "the Commission") Motion to Dismiss [Doc. 33]. The Court, having reviewed the parties' written submissions, being familiar with the case file by virtue of having previously heard argument and having addressed the likelihood of success on the merits of Plaintiff's claims in conjunction with Plaintiff's Motion for Preliminary Injunction (Doc. 19) and this Court's oral ruling denying same (Docs. 41, 42 and 54), and considering itself otherwise fully advised in the premises of the motion, hereby FINDS and ORDERS as follows:

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Free Speech is an unincorporated nonprofit association formed on February 21, 2012 and is comprised of three Wyoming residents. Free Speech's stated mission is to promote and protect free speech, limited government, and constitutional accountability, and to advocate positions on various political issues including free speech, sensible environmental policy, gun rights, land rights, and control over personal health care. Its bylaws require that it operate independently of political candidates, committees, and political parties. (Am. Compl. ¶¶ 1 & 10; Am. Compl. Ex. A at Ex. 1.) On July 26, 2012, Plaintiff filed this lawsuit challenging certain FEC regulations that Plaintiff alleges abridge its First Amendment freedoms. Specifically, Plaintiff brings facial and as applied challenges against 11 C.F.R. § 100.22(b), alleging its definition of "express advocacy" is unconstitutionally vague and overbroad and triggers burdensome registration and reporting requirements which act as the functional equivalent of a prior restraint on political speech. Plaintiff further challenges the constitutionality of the FEC's interpretation and enforcement process regarding political committee status, solicitation tests, the "major purpose" test, and express advocacy determinations. (Am. Compl. ¶ 2.)

On July 13, 2012, Free Speech filed a Motion for Preliminary Injunction (Doc. 19) seeking to enjoin the FEC from enforcing any of the challenged regulations or policies. This matter was fully briefed by the parties and amicus curiae and the Court heard oral argument on the motion on September 12, 2012. On October 3, 2012, this Court issued an oral ruling denying Plaintiff's motion for preliminary injunction. (Docs. 41, 42, and 54.) Plaintiff timely appealed on October 19, 2012, and Plaintiff's interlocutory appeal is currently pending before the Tenth Circuit Court of Appeals.

Prior to the Court's oral ruling on Plaintiff's Motion for Preliminary Injunction, the FEC filed

2

a motion to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). This motion has been fully briefed and is ripe for a decision on the merits.

"Ordinarily an interlocutory injunction appeal under 1292(a)(1) does not defeat the power of the trial court to proceed further with the case." 16 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3921.2 (hereinafter "Wright & Miller"). "Although the filing of a notice of appeal ordinarily divests the district court of jurisdiction, in an appeal from an order granting or denying a preliminary injunction, a district court may nevertheless proceed to determine the action on the merits." *U.S. v. Price*, 688 F.2d 204, 215 (3d Cir. 1982) (internal citation omitted). "The desirability of prompt trial-court action in injunction cases justifies trial-court consideration of issues that may be open in the court of appeals. A good illustration is provided by a motion to dismiss for failure to state a claim." Wright & Miller § 3921.2. Although a court of appeals may determine whether a claim has been stated as part of the interlocutory appeal, a district court nonetheless retains jurisdiction to dismiss for failure to state a claim pending appeal. *Id.* This power is desirable "both in the interest of expeditious disposition and in the face of uncertainty as to the extent to which the court of appeals will exercise its power." *Id.*

In addressing this matter now, this Court is mindful of the issues that have been presented on appeal as well as the current stage of the appellate litigation. This case presents purely legal questions that have been fully briefed and argued to this Court. Because this Court's substantive analysis of the constitutional issues addressed in the pending motion to dismiss is identical to that set forth in the Court's ruling denying Plaintiff's preliminary injunction motion, the Court deems it appropriate to address Plaintiff's claims on the merits. Therefore, for the reasons set forth on the

record during the Court's oral ruling, and for the reasons set forth more fully below, the Court will grant Defendant's motion to dismiss for failure to state a claim.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference ." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

## DISCUSSION

### A. Standard of Review – Exacting Scrutiny

At the outset, this Court addresses Plaintiff's contention that this Court should apply strict scrutiny to the regulations and policies at issue. Plaintiff challenges, on an as-applied and facial basis, the FEC's definition of "express advocating," *see* 101 C.F.R. § 100.22(b), the FEC's policy for determining political committee status, and the FEC's policy for determining when donations given in response to solicitations will be deemed "contributions." At their core, however, these challenged rules and policies implement only disclosure requirements. *See* 2 U.S.C. § 434(c) (reporting requirements for "independent expenditures"); 2 U.S.C. § 432, 433, 434(a)(4) (political reporting and organization requirements). The question before this Court, therefore, is not whether

4

Plaintiff can make expenditures for the speech it proposes or raise money without limitation, but simply whether it must provide disclosure of its electoral advocacy.

"Disclaimer and disclosure requirements may burden the ability to speak, but they impose no ceiling on campaign-related activities, and do not prevent anyone from speaking." *Citizens United v. FEC*, 558 U.S. 310, 130 S.Ct. 876, 914 (2010) (internal citations and quotation marks omitted). Accordingly, the Supreme Court has subjected those requirements to "exacting scrutiny" which requires "a substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Id.*; *see also Real Truth About Abortion (RTAA) v. FEC*, 681 F.3d 544, 549 (4th Cir. 2010) ("[A]n intermediate level of scrutiny known as 'exacting scrutiny' is the appropriate standard to apply in reviewing provisions that impose disclosure requirements, such as the regulation and policy."); *New Mexico Youth Organized v. Herrera*, 611 F.3d 669, 676 (10th Cir. 2010) ("The regulations at issue here require disclosure, thus distinguishing them from regulations that limit the amount of speech a group may undertake. . . . As such, the regulations must pass 'exacting scrutiny.'"). Accordingly, the Court applies exacting scruting to determine whether the regulations and policies at issue are constitutional.

### B. Express Advocacy – 11 C.F.R. § 100.22(b)

Plaintiff's first challenge involves the FEC's definition of express advocacy codified at 11 C.F.R. § 100.22. This regulation is used to define what constitutes an "independent expenditure" under 2 U.S.C. § 431(17), which in turn, determines whether disclosures are required under 2 U.S.C. § 434(c).[1] *See RTAA*, 681 F.3d at 548.

---

[1] An "independent expenditure" is defined as "an expenditure . . . ***expressly advocating*** the election or defeat of a clearly identified candidate" and not made by or in coordination with a candidate or political party or committee. 2 U.S.C. § 431(17) (emphasis added). A person or

5

Regulation 100.22 sets forth a two-part definition of the term "expressly advocating." Subsection (a) of the regulation defines "expressly advocating" consistent with the Supreme Court's decision in *Buckley v. Valeo*, 424 U.S. 1, 44, 96 S.Ct. 612 (1976), and includes communications using words or phrases "which in context can have no other reasonable meaning than to urge the election or defeat of one or more clearly identified candidate(s)". 11 C.F.R. § 100.22(a). In *Buckley*, the Supreme Court addressed the constitutionality of an expenditure limit which provided that "[n]o person may make any expenditure . . . relative to a clearly identified candidate during a calendar year which, when added to all other expenditures made by such person during the year advocating the election or defeat of such candidate, exceeds $1000." *Buckley*, 424 U.S. at 39. Troubled by the vagueness of the phrase "relative to a clearly identified candidate," the Supreme Court construed the phrase "relative to" to "apply only to expenditures for communications that *in express terms* advocate the election or defeat of a clearly identified candidate for federal office." *Id.* at 44 (emphasis added). The Court explained in a footnote that "[t]his construction would restrict the application of [the spending limit] to communications containing express words of advocacy of election or defeat, such as 'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,' 'defeat,' 'reject.'" *Id.* at 44 n.52. Consistent with this guidance, subsection (a) of the FEC's definition of "expressly advocating" later codified these types of "magic words" to signal express advocacy.[2]

organization – other than a political committee – that finances ***independent expenditures*** aggregating more than $250 during a calendar year must file with the FEC a disclosure report that identifies, *inter alia*, the date and amount of each expenditure and anyone who contributed over $200 to further it. *See* 2 U.S.C. § 434(c); 11 C.F.R. § 109.10(e) (emphasis added).

[2] *See* 11 C.F.R. § 100.22(a) (defining "expressly advocating" to mean any communication that "[u]ses phrases such as 'vote for the President,' 're-elect your Congressman,' 'support the

Subsection (b) of the regulation, on the other hand, "defines 'expressly advocating' more contextually, without using the 'magic words.'" *RTAA*, 681 F.3d at 550. This subsection, which is the subject of Plaintiff's constitutional challenge, defines "expressly advocating" to include any communication that:

> When taken as a whole and with limited reference to external events, such as the proximity to the election, could only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidate(s) because--
> (1) The electoral portion of the communication is unmistakable, unambiguous, and suggestive of only one meaning; and
> (2) Reasonable minds could not differ as to whether it encourages actions to elect or defeat one or more clearly identified candidate(s) or encourages some other kind of action.

11 C.F.R. § 100.22(b).

Plaintiff argues that part (b) of the FEC's definition of expressly advocating "goes beyond any proper construction of express advocacy and offers no clear guidelines for speakers to tailor their constitutionally protected conduct and speech," and "fail[s] to limit its application to expenditures for communications that in 'express terms' advocate the election or defeat of a clearly identified candidate for federal office." (Am. Compl. ¶¶ 74-75.) In this regard, Plaintiff appears to suggest that "express advocacy" cannot permissibly extend beyond the "magic words" acknowledged in *Buckley* and codified in subsection (a). However, this position is foreclosed by several recent Supreme Court

---

Democratic nominee,' 'cast your ballot for the Republican challenger for U.S. Senate in Georgia,' 'Smith for Congress,' 'Bill McKay in 94,' 'vote Pro–Life' or 'vote Pro–Choice' accompanied by a listing of clearly identified candidates described as Pro–Life or Pro–Choice, 'vote against Old Hickory,' 'defeat' accompanied by a picture of one or more candidate(s), 'reject the incumbent,' or communications of campaign slogan(s) or individual word(s), which in context can have no other reasonable meaning than to urge the election or defeat of one or more clearly identified candidate(s), such as posters, bumper stickers, advertisements, etc. which say 'Nixon's the One,' 'Carter '76,' 'Reagan/Bush' or 'Mondale!'").

decisions which have upheld the FEC's approach to defining express advocacy not only in terms of *Buckley*'s "magic words" as recognized in subsection (a), but also their "functional equivalent," as provided in subsection (b). *RTAA*, 681 F.3d at 550.

In *McConnell v. FEC*, 540 U.S. 93 (2003), the Supreme Court considered a facial overbreadth challenge to Title II of the Bipartisan Campaign Reform Act of 2002 ("BCRA") which included a provision defining express advocacy for purposes of electioneering communications. In rejecting the facial challenge, the Supreme Court noted "that *Buckley's* narrow construction of the FECA to require express advocacy was a function of the vagueness of the statutory definition of "expenditure,' not an absolute First Amendment imperative." *RTAA*, 681 F.3d at 550 (citing *McConnell*, 540 U.S. at 191-92). Accordingly, the Supreme Court in *McConnell* held that "Congress could permissibly regulate not only communications containing the 'magic words' of *Buckley*, but also communications that were 'the functional equivalent' of express advocacy." *Id.* (citing *McConnell*, 540 U.S. at 193).

In *FEC v. Wisconsin Right to Life, Inc. (WRTL)*, 551 U.S. 449 (2007), the Supreme Court adopted a test for the "functional equivalent of express advocacy" which is consistent with the language set forth in section 110.22(b). *See WRTL*, 551 U.S. at 474 n.7; *RTAA*, 681 F.3d at 552. The controlling opinion in *WRTL* clarified that "a court should find that an ad is the functional equivalent of express advocacy only if the ad is *susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate.*" *WRTL*, 551 U.S. at 460-470 (emphasis added). This functional equivalent test closely correlates to the test set forth in subsection (b), which provides that a communication is express advocacy if it "could only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified

8

candidate(s)." 11 C.F.R. § 100.22(b). Indeed, as the Fourth Circuit has noted, although the language of Section 110.22(b) does not exactly mirror *WRTL*'s functional equivalent test, the test set forth in Section 110.22(b) is "likely narrower . . . since it requires a communication to have an 'electoral portion' that is 'unmistakeable' and 'unambiguous.'" *RTAA*, 681 F.3d at 552.

Finally, the Supreme Court's recent decision in *Citizens United* reaffirmed the constitutionality of the *WRTL* test and provided further support for the FEC's use of the functional equivalent test to define express advocacy. In *Citizens United*, the Court applied the *WRTL* functional equivalent test to determine whether the communication at issue would be prohibited by the corporate funding restrictions set forth in Title II of the BCRA, ultimately concluding that "[u]nder the standard stated in *McConnell* and further elaborated in *WRTL*, the film qualifies as the functional equivalent of express advocacy." *Citizens United*, 130 S.Ct. at 890. In that opinion, the Supreme Court upheld federal disclaimer and disclosure requirements applicable to *all* "electioneering communications." *Id.* at 914. In so holding, the Court "reject[ed] Citizens United's contention that the disclosure requirements must be limited to speech that is the functional equivalent of express advocacy." *Id.* at 915. In other words, in addressing the permissible scope of disclosure requirements, the Supreme Court not only rejected the "magic words" standard urged by Plaintiff but also found that disclosure requirements could extend beyond speech that is the "functional equivalent of express advocacy" to address even ads that "only pertain to a commercial transaction." *Id.* at 916. Thus, "*Citizens United* . . . supports the [FEC's] use of a functional equivalent test in defining 'express advocacy.' . . . If mandatory disclosure requirements are permissible when applied to ads that merely *mention* a federal candidate, then applying the same burden to ads that go further and are the functional equivalent of express advocacy cannot automatically be impermissible."

9

*RTAA*, 681 F.3d at 551-52 (emphasis original). As a result, *Citizens United* directly contradicts Plaintiff's argument that the definition of express advocacy set forth in subsection (b) is overly broad with respect to disclosure requirements.

In addition to its overbreadth argument, Plaintiff urges that section 100.22(b) is impermissibly vague based on the fact that the FEC did not "issue a conclusive opinion" as to whether some of Plaintiff's proposed ads constituted express advocacy in the advisory opinion process. However, as the Fourth Circuit has noted, "cases that fall close to the line will inevitably arise when applying § 100.22(b)." *RTAA*, 681 F.3d at 554. "This kind of difficulty is simply inherent in any kind of standards-based test." *Id.*; *see also National Organization for Marriage, Inc. v. Sec. of State of Fla.*, 753 F.Supp.2d 1217, 1221 (N.D. Fla. 2010) ("The fact that 'it may be difficult in some cases to determine whether these clear requirements have been met' does not mean that the statute is void for vagueness.") (quoting *United States v. Williams*, 553 U.S. 285, 306, 128 S.Ct. 1830 (2008)).

### C. The "Solicitation" Standard

Plaintiff also challenges the constitutionality of the "solicitation" standard used by the FEC as vague and overbroad, arguing that it lacks clarity and guidance sufficient to enable interested persons to tailor their activities in compliance with the law. The FECA defines "contribution" to include "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 2 U.S.C. § 431(8)(A)(i). It further requires "any person" who "solicits any contribution through any broadcasting station, newspaper, magazine, outdoor advertising facility, mailing, or any other type of general public political advertising" to include a specified disclaimer in the solicitation. *Id.* § 441d(a); *see* 11

10

C.F.R. § 110.11(a)(3). Thus, the FECA requires disclaimers for communications that "solicit[] any contribution," 2 U.S.C. § 441d(a), but it does not define when a request for donations constitutes a "solicitation."

The standard applied by the FEC for determining whether a request for funds "solicits" a "contribution" under the FECA was set forth by the Second Circuit in *FEC v. Survival Education Fund, Inc.*, 65 F.3d 285, 295 (2d Cir. 1995) ("*SEF*"). Under that standard, disclosure is required "if [a communication] contains solicitations clearly indicating that the contributions will be targeted to the election or defeat of a clearly identified candidate for federal office." *Id.* This solicitation standard does not interfere with Plaintiff's ability to raise funds to support its advocacy. Plaintiff is free to spend unlimited funds on its solicitations and to solicit unlimited funds for its express advocacy. Any "solicitations" of "contributions" simply trigger disclosure requirements, and those disclosure requirements are substantially related to the government's interest in requiring disclosure. As the Second Circuit recognized in *SEF*, disclosure requirements for solicitations "serve[] important First Amendment values." *Id.* at 296. "Potential contributors are entitled to know that they are supporting independent critics of a candidate and not a group that may be in league with that candidate's opponent." *Id.* The disclosure requirement is thus "a reasonable and minimally restrictive method of ensuring open electoral competition that does not unduly trench upon defendants' First Amendment rights." *Id.* (internal quotation marks and citation omitted). As the Supreme Court explained in *Citizens United*, disclosures serve important interests even in the context of electioneering communications that need not be targeted to the election or defeat of a federal candidate. Such disclaimers "insure that the voters are fully informed about the person or group who is speaking." *Citizens United*, 130 S.Ct. 915 (citations omitted). "At the very least, the

11

disclaimers avoid confusion by making clear that the ads are not funded by a candidate or political party." *Id.*

Plaintiff's vagueness argument appears to be premised upon the fact that the advisory opinion issued to Plaintiff by the FEC concluded that two of Plaintiff's donation requests would not be solicitations under the Act, while the Commission could not approve a response regarding the remaining two donation requests. (Am. Compl., Ex. G.) However, as noted above, "[t]he fact that 'it may be difficult in some cases to determine whether these clear requirements have been met' does not mean that the statute is void for vagueness." *National Organization for Marriage, Inc.*, 753 F.Supp.2d at 1221 (quoting *Williams*, 553 U.S. at 306); *see also RTAA*, 681 F.3d at 554.

Plaintiff fails to establish any constitutional deficiency in the FEC's approach to determining whether a communication is a "solicitation" for "contributions." Plaintiff's claim relating to the solicitation standard is insufficient as a matter of law and must be dismissed.

## C. Political Committee Status - The "Major Purpose" Test

Finally, Plaintiff challenges the FEC's policy of determining political committee status on a case-by-case basis. Under the FEC's approach, "the Commission first considers a group's political activities, such as spending on a particular electoral or issue-advocacy campaign, and then it evaluates an organization's 'major purpose,' as revealed by that group's public statements, fundraising appeals, government filings, and organizational documents." *RTAA*, 681 F.3d at 555 (internal citations omitted).

A "political committee" is defined by the FECA as any "committee, club, association or other group of persons" that makes more than $1,000 in political expenditures or receives more than $1,000 in contributions during a calendar year. 2 U.S.C. § 431(4)(A). "Expenditures" and

12

"contributions" are defined to encompass any spending or fundraising "for the purpose of influencing any election for Federal office." 2 U.S.C. §§ 431(8)(A)(i), 431(9)(A)(i). However, in *Buckley v. Valeo*, the Supreme Court concluded that defining political committees only in terms of expenditures and contributions "could be interpreted to reach groups engaged purely in issue discussion." *Buckley*, 424 U.S. at 79. "Accordingly, the Court limited the applicability of FECA's PAC requirements to organizations controlled by a candidate or whose 'major purpose' is the nomination or election of candidates." *RTAA*, 681 F.3d at 555 (citing *Buckley*, 424 U.S. at 79). "Thus the major purpose test serves as an additional hurdle to establishing political committee status. Not only must the organization have raised or spent $1,000 in contributions or expenditures, but it must additionally have the major purpose of engaging in Federal campaign activity." *See* Political Committee Status, 72 Fed. Reg. 5595, 5601 (Feb. 7, 2007).

As the Fourth Circuit has observed, "[a]lthough *Buckley* did create the major purpose test, it did not mandate a particular methodology for determining an organization's major purpose. And thus the Commission was free to administer FECA political committee regulations either through categorical rules or through individualized adjudications." *RTAA*, 681 F.3d at 556. The FEC opted for the latter approach, explaining that "[a]pplying the major purpose doctrine . . . requires the flexibility of a case-by-case analysis of an organization's conduct that is incompatible with a one-size-fits-all rule." 72 Fed. Reg. at 5601. "The determination of whether the election or defeat of federal candidates for office is *the* major purpose of an organization, and not simply *a* major purpose, is inherently a comparative task, and in most instances it will require weighing the importance of some of a group's activities against others." *See RTAA*, 681 F.3d at 556 (emphasis original).

13

"The necessity of a contextual inquiry is supported by judicial decisions applying the major purpose test, which have used the same fact-intensive analysis that the Commission has adopted."

*Id.* at 556-57. This Court agrees with the assessment of the Fourth Circuit in *RTAA*:

> [T]he Commission, in its policy, adopted a sensible approach to determining whether an organization qualifies for PAC status. And more importantly, the Commission's multi-factor major-purpose test is consistent with Supreme Court precedent and does not unlawfully deter protected speech.

*Id.* at 558. Plaintiff's constitutional challenge to that policy is therefore unavailing.

## CONCLUSION

The FEC disclaimer requirements at issue are necessary to provide the electorate with information and to insure that the voters are fully informed about the person or group who is speaking. *Citizens United*, 130 S. Ct. at 915. Moreover, the disclosure requirements provide the transparency that "enables the electorate to make informed decisions and give proper weight to different speakers and messages." *Id.* at 917. The FEC's functional equivalent and major purpose tests are essential components to narrowly, but effectively identifying those entities, ads and solicitations that fall within the FEC's reporting, disclaimer, and disclosure requirements. These disclaimer and disclosure requirements become even more essential and necessary to enable informed choice in the political marketplace following Citizen United's change to the political campaign landscape with the removal of the limit on corporate expenditures. For all of the reasons set forth above, and as previously set forth in this Court's oral ruling denying Plaintiff's Motion for Preliminary Injunction, Plaintiff's Complaint fails to state a claim upon which relief may be granted. It is therefore **ORDERED** that Defendant Federal Election Commission's Motion to Dismiss [Doc.

14