*12-2904-cv*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2012

No. 12-2904-cv

VERMONT RIGHT TO LIFE COMMITTEE, INC. AND VERMONT RIGHT TO LIFE COMMITTEE – FUND FOR INDEPENDENT POLITICAL EXPENDITURES,
*Plaintiffs-Appellants*,

*v.*

WILLIAM H. SORRELL, IN HIS OFFICIAL CAPACITY AS VERMONT ATTORNEY GENERAL, DAVID R. FENSTER, ERICA MARTHAGE, LISA WARREN, T.J. DONOVAN, VINCENT ILLUZZI, JAMES HUGHES, DAVID MILLER, JOEL PAGE, WILLIAM PORTER, ALAN FRANKLIN, MARC D. BRIERRE, THOMAS KELLY, TRACY SHRIVER, AND ROBERT SAND, IN THEIR OFFICIAL CAPACITIES AS VERMONT STATE'S ATTORNEYS, AND JAMES C. CONDOS, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE,
*Defendants-Appellees*.[*]

Appeal from the United States District Court
for the District of Vermont.
No. 09-cv-188 — William K. Sessions, III, *Judge*.

ARGUED: MARCH 15, 2013
DECIDED: JULY 2, 2014

---

[*] The Clerk of the Court is requested to amend the official caption as noted above.

Before: WESLEY and DRONEY, *Circuit Judges*, and BRICCETTI, *Judge*.*

Plaintiffs, a non-profit corporation and a Vermont political committee, appeal from an order of the United States District Court for the District of Vermont (William K. Sessions, III, *Judge*) granting summary judgment to Defendants, Vermont officials charged with enforcing Vermont elections statutes. The non-profit corporation asserts that statutory provisions requiring identification of the speaker on any "electioneering communication," requiring reporting of certain "mass media activities," and defining and requiring reporting by "political committees" are void for vagueness and violate the First Amendment facially and as applied. The Vermont political committee brings an as-applied challenge against a provision limiting contributions to political committees. We **AFFIRM** the judgment of the district court.

> RANDY ELF (James Bopp, Jr., *on the brief*), James Madison Center for Free Speech, Terre Haute, Indiana, *for Vermont Right to Life Committee, Inc. and Vermont Right to Life Committee – Fund for Independent Political Expenditures.*
>
> EVE R. JACOBS-CARNAHAN (Megan J. Shafritz, *on the brief*), Assistant Attorneys General for the State

* The Honorable Vincent L. Briccetti, of the Southern District of New York, sitting by designation.

of Vermont, Montpelier, Vermont, *for William H. Sorrell, et al.*

George Jepsen, Attorney General for the State of Connecticut, Hartford, Connecticut; Maura Murphy Osborne, Assistant Attorney General for the State of Connecticut, Hartford, Connecticut, *for amici curiae States of Connecticut, New York, Hawaii, Iowa, Kentucky, Minnesota, Montana, New Mexico, and Washington, in support of William H. Sorrell, et al.*

J. Gerald Hebert, The Campaign Legal Center, Washington, D.C., *for amici curiae The Campaign Legal Center, and Democracy 21, in support of William H. Sorrell, et al.*

DRONEY, *Circuit Judge*:

The two Plaintiffs-Appellants here are Vermont Right to Life Committee, Inc. ("VRLC") and Vermont Right to Life Committee – Fund for Independent Political Expenditures ("VRLC-FIPE"). VRLC is a Vermont non-profit corporation and VRLC-FIPE is a political committee formed under Vermont law. Both advocate the "universal recognition of the sanctity of human life from conception through natural death." J.A. 657, ECF No. 34. VRLC challenges

three disclosure provisions of Vermont's elections laws, contending that they are unconstitutionally vague and violate VRLC's freedom of speech. First, VRLC challenges the statute requiring that "electioneering communications" identify their sponsor. Second, VRLC challenges the statute requiring that groups engaged in any "mass media activity" must submit certain reports to the Vermont Secretary of State and relevant candidates. Third, VRLC challenges Vermont's definition of "political committees" and its requirement that such committees submit campaign finance reports. VRLC-FIPE raises an as-applied challenge to Vermont's limit on contributions to political committees, contending that VRLC-FIPE is an independent-expenditure-only group and therefore the limit violates its freedom of speech. The Defendants-Appellees are various Vermont officials responsible for enforcing Vermont's elections laws. The district court (Sessions, *J.*) granted Defendants summary judgment on every claim. We AFFIRM the judgment of the district court.

4

**BACKGROUND**

**I. Parties**

VRLC is a Vermont corporation that files federal tax returns as a non-profit entity under 26 U.S.C. § 501(c)(4). VRLC-FIPE was formed by VRLC in 1999 as a registered Vermont political committee under the Vermont campaign finance statutes. VRLC-FIPE contends that it is an "independent expenditure committee" because the resolution of VRLC creating VRLC-FIPE provides that it may not "make monetary or in-kind contributions to candidates," or "coordinate the content, timing or distribution of its communications or other activities with candidates or their campaigns." J.A. 1125, ECF No. 36. A third entity, Vermont Right to Life Committee, Inc. Political Committee ("VRLC-PC"), also formed by VRLC, engages in campaign activities, including making direct contributions to pro-life political candidates. VRLC-PC is not a party in this action.

**II.    Statutory Scheme**

This is not our first encounter with challenges to Vermont election laws by VRLC entities.  In *Vermont Right to Life Committee, Inc. v. Sorrell* ("*VRLC I*"), 221 F.3d 376, 387, 389 (2d Cir. 2000), we held that previous versions of Vermont's electioneering communication and mass media activity provisions were facially unconstitutional.  We also rejected a facial challenge by VRLC-FIPE to Vermont's contribution limit for political committees in a separate lawsuit.  *Landell v. Sorrell*, 382 F.3d 91, 139-40 (2d Cir. 2004), *rev'd in part sub nom. Randall v. Sorrell*, 548 U.S. 230 (2006).

In the instant case, VRLC has challenged the revised versions of the "electioneering communication," "mass media activity," and "political committee" provisions of Vermont's campaign finance laws.  VRLC contends that the definitions of particular terms in those laws render the statutes unconstitutional under the First and

6

Fourteenth Amendments. VRLC-FIPE challenges the contribution limits as applied to it.

While this appeal was pending, Vermont repealed and replaced its campaign finance statutes. Act of Jan. 23, 2014, 2014 Vt. Acts & Resolves No. 90, Sec. 2, *available at* http://www.leg.state.vt.us/DOCS/2014/ACTS/ACT090.PDF (codified at Vt. Stat. Ann. tit. 17, § 2901 *et seq.*). In deciding this appeal, this Court must apply the law now in effect. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 477 F.3d 765, 766 (2d Cir. 2007). The previous law, however, still governs VRLC-FIPE's as-applied challenge to Vermont's contribution limits because the new contribution limits do not take effect until January 1, 2015. Act of Jan. 23, 2014, 2014 Vt. Acts & Resolves No. 90, Sec. 8(a)(2).

We first set out the relevant statutory language.

**A.    Electioneering Communication**

The definition of "electioneering communication" includes:

any communication that refers to a clearly identified candidate for office and that promotes or supports a candidate for that office or attacks or opposes a candidate for that office, regardless of whether the communication expressly advocates a vote for or against a candidate, including communications published in any newspaper or periodical or broadcast on radio or television or over the Internet or any public address system; placed on any billboards, outdoor facilities, buttons, or printed material attached to motor vehicles, window displays, posters, cards, pamphlets, leaflets, flyers, or other circulars; or contained in any direct mailing, robotic phone calls, or mass e-mails.

Vt. Stat. Ann. tit. 17, § 2901(6). With few exceptions, electioneering

communications must identify "the name and mailing address of the

person, candidate, political committee, or political party that paid

for the communication." *Id.* § 2972(a). Electioneering

communications "paid for by or on behalf of a political committee or

political party" must also identify certain contributors. *Id.* § 2972(c).

8

**B.     Mass Media Activity**

Mass media activities include television commercials, radio commercials, mass mailings, literature drops, newspaper advertisements, robotic phone calls, and telephone banks, "which include[] the name or likeness of a clearly identified candidate for office." *Id.* § 2901(11). A person engaging in certain "mass media activity" must file a report with the Vermont Secretary of State and send a copy to relevant candidates. *Id.* § 2971(a)(1). "The report shall identify the person who made the expenditure; the name of each candidate whose name or likeness was included in the activity; the amount and date of the expenditure; to whom it was paid; and the purpose of the expenditure." *Id.* § 2971(b).

The disclosure requirements concerning electioneering communications and mass media activities apply to all individuals and entities engaging in such activities, not just political action committees.

9

**C.      Political Committee**

A "political committee" ("PAC") is defined as:

> any formal or informal committee of two or more individuals or a corporation, labor organization, public interest group, or other entity, not including a political party, which accepts contributions of $1,000.00 or more and makes expenditures of $1,000.00 or more in any two-year general election cycle for the purpose of supporting or opposing one or more candidates, influencing an election, or advocating a position on a public question in any election, and includes an independent expenditure-only political committee.

*Id.* § 2901(13).  The definition of "political committee" is based in part on the definitions of "contribution" and "expenditure."  *Id.*  A "contribution" is "a payment, distribution, advance, deposit, loan, or gift of money or anything of value, paid or promised to be paid for the purpose of influencing an election, advocating a position on a public question, or supporting or opposing one or more candidates

in any election." *Id.* § 2901(4).[1]  As is relevant here, the term "election" refers only to efforts to elect officials within the state of Vermont, *id.* § 2901(5), and "public question" refers to "an issue that is before the voters for a binding decision," *id.* § 2901(15).  An "expenditure" is "a payment, disbursement, distribution, advance, deposit, loan, or gift of money or anything of value, paid or promised to be paid, for the purpose of influencing an election, advocating a position on a public question, or supporting or opposing one or more candidates." *Id.* § 2901(7).

Prior to the district court's decision below, a Vermont Superior Court considered a vagueness and overbreadth challenge to the phrase "influencing an election" in the definition of "political committee" in the former version of Vermont's campaign finance

---

[1] The definition then enumerates a number of exceptions such as volunteer services and personal loans from lending institutions.  Vt. Stat. Ann. tit. 17, § 2901(4).

11

statutes.[2] *Vermont v. Green Mountain Future*, Civ. Div. No. 758-10-10 Wncv, slip op. at 12 (Wash. Super. Ct. June 28, 2011), *available at* http://www.vermontjudiciary.org/20112015 Tcdecisioncvl/2011-6-30-1.pdf. The Superior Court interpreted this phrase as "the equivalent of 'supporting or opposing one or more candidates.'" *Id.* Under this interpretation, the phrase "influencing an election" would reach no farther than the phrase "supporting or opposing one or more candidates." After the district court granted summary judgment in this case, however, the Vermont Supreme Court interpreted the "influencing" language in a manner slightly different than the Vermont Superior Court. *Vermont v. Green Mountain Future*, 86 A.3d 981 (Vt. 2013) ("*Green Mountain Future*"). Although the Vermont Supreme Court agreed with the Superior Court that a narrowing construction was required to address the phrase's potential vagueness, it determined that the Superior Court had overly

---

[2] The decision also addressed the language "affecting the outcome of an election," which is not contained in the new law and so does not need to be considered here. *See* Vt. Stat. Ann. tit. 17, § 2801(4) (repealed 2014).

narrowed the statute. *Id.* at 996-98. The Vermont Supreme Court found that the phrase "influencing an election" referred only to the "class of advocacy" captured by the phrase "supporting or opposing one or more candidates," *id.* at 997, but concluded that the phrase covered a broader range of *methods* than the "supporting or opposing one or more candidates" language. *Id.* at 997-98. The Vermont Supreme Court also found the definition of "electioneering communication" not to be overbroad or vague. *Id.* at 995.

A Vermont PAC satisfying these definitions is subject to numerous requirements under Vermont law. For example, a PAC must make all expenditures from a single checking account, file campaign finance reports with the Vermont Secretary of State identifying each person who contributed more than $100 to the PAC, and list all PAC expenditures in certain circumstances. Vt. Stat. Ann. tit. 17, §§ 2922(b), 2963, 2964(b)(1). These reports must be filed

three to four times during an election year. *Id.* § 2964(b)(1), (c).[3]

Additionally, PACs "shall not accept contributions totaling more than $2,000.00 from a single source, political committee or political party in any two-year general election cycle." Vt. Stat. Ann. tit. 17, § 2805(a).[4]

## III. District Court Proceedings

The district court began its analysis of the parties' cross motions for summary judgment by considering VRLC's vagueness challenges to the Vermont statutes. Beginning with the definitions of "political committee," "contribution," and "expenditure," the district court concluded that the definitions were not vague because the phrase "influencing an election" was no broader than the phrase

---

[3] Plaintiffs also note that certain federal requirements apply to groups qualifying as a "political committee" as defined under federal law. *See* Appellants' Br. 44 (citing 2 U.S.C. § 441b). Plaintiffs have not challenged the federal requirements in this action.

[4] The new contribution limitations take effect on January 1, 2015, on which date a "political committee shall not accept contributions totaling more than: (A) $4,000.00 from a single source; (B) $4,000.00 from a political committee; or (C) $4,000.00 from a political party." Vt. Stat. Ann. tit. 17, § 2941(a)(4).

"supporting or opposing one or more candidates." *Vt. Right to Life Comm., Inc. v. Sorrell*, 875 F. Supp. 2d 376, 387-90 (D. Vt. 2012). In so ruling, the district court noted that the U.S. Supreme Court had rejected a vagueness challenge to similar statutory language. *Id.* at 389 (citing *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 140 n.64 (2003), *overruled in part by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 365-66 (2010)). The district court rejected VRLC's vagueness challenge to the terms "promotes or supports" and "attacks or opposes" in the definition of electioneering communications on similar grounds. *Id.* at 390. The district court further rejected the vagueness challenge to the phrase "on whose behalf" because its use elsewhere in related Vermont law made its application "clearly defined." *Id.* at 390-91.

The district court then considered VRLC's overbreadth claims. Drawing on *Buckley v. Valeo*, 424 U.S. 1, 79 (1976) (per curiam), and

subsequent Supreme Court precedent,[5] the district court concluded that the Vermont statutes' lack of explicit reference to a "major purpose" or "express advocacy" test did not make the laws unconstitutionally overbroad. *Vt. Right to Life Comm., Inc.*, 875 F. Supp. 2d at 395-97.

The district court also concluded that the First Amendment challenge to the PAC definition should be reviewed under "exacting scrutiny," because designation as a "political committee" triggered a disclosure regime. *Id.* at 392-93. Applying this standard of review, the district court concluded that the statute did not impose

---

[5] In *Buckley*, the Supreme Court responded to vagueness and overbreadth concerns by construing a federal elections statute to reach only "organizations that are under the control of a candidate *or the major purpose of which is the . . . election of a candidate*," and to reach only express advocacy, as opposed to issue advocacy. 424 U.S. 1, 79 (1976) (per curiam) (emphasis added). Subsequent Supreme Court decisions clarified that when *Buckley* construed the federal statute to reach express advocacy but exclude issue advocacy, it did not hold "that a statute that was neither vague nor overbroad would be required to toe the same express advocacy line." *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 192 (2003), *overruled in part by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 365-66 (2010). In *Citizens United v. Federal Election Commission*, the Supreme Court clarified that disclosure regimes could sweep more broadly than speech that is the functional equivalent of express advocacy. 558 U.S. at 368-69.

16

impermissible burdens or sweep in a substantial amount of protected speech. *Id.* at 397. Applying exacting scrutiny to the electioneering communication and mass media activity statutes, the district court reached the same conclusion, finding them appropriately tailored to Vermont's important interests. *Id.* at 398-400.

The district court then addressed Vermont's limits on contributions to PACs. VRLC-FIPE contended that the law was unconstitutional as applied to it because VRLC-FIPE did not make contributions to any political campaigns and makes its expenditures independent of any candidate or political campaign.[6] The district

---

[6] The district court noted that VRLC-FIPE was barred from launching a facial challenge to the statute because of a judgment against it in previous litigation, *Vt. Right to Life Comm., Inc. v. Sorrell*, 875 F. Supp. 2d 376, 383 n.5 (D. Vt. 2012), and VRLC did not join in VRLC-FIPE's as-applied challenge. The district court also determined that the challenge survived *Randall v. Sorrell*, 548 U.S. 230 (2006), because the "Supreme Court did not examine that portion of the law when it struck down other Vermont contribution limits." *Id.* Neither party has questioned this conclusion, but we note that the Supreme Court "[did] not believe it possible to sever some of the Act's [unconstitutional] contribution limit provisions from others that might remain fully operative." *Randall*, 548 U.S. at 262.

17

court agreed that the State could not limit contributions to a group that did not coordinate with or make contributions to candidates – that is, a group that only made independent expenditures. The district court noted that "because independent expenditures cannot corrupt, governments have no valid anti-corruption interest in limiting contributions to independent-expenditure-only groups." *Id.* at 403. By contrast, groups that made contributions to or coordinated with candidates could be subjected to contribution limits. *Id.* at 402 (citing *Landell*, 382 F.3d at 140-41). The district court went on to reject arguments that applying limits to an independent-expenditure-only group would be justified by Vermont's "unique record of corruption" or by an informational interest in channeling funds into more transparent outlets.[7] *Id.* at 403-04.

---

[7] In light of *McCutcheon v. Federal Election Commission*, 134 S. Ct. 1434 (2014), and "the developing legal framework emerging from other courts," Vermont has withdrawn its argument that limits on contributions to independent-expenditure groups are constitutionally permitted based on a state interest in transparency.

The district court concluded, however, that VRLC-FIPE could not benefit from any protections accorded to independent-expenditure-only groups because of its close connection to VRLC-PC, an arm of VRLC that "contributes funds to candidates." *Id.* at 404-410. Based on the undisputed facts before it, the district court concluded "that the structural melding between [VRLC-FIPE] and [VRLC-PC] leaves no significant functional divide between them for the purposes of campaign finance law." *Id.* at 408. The district court acknowledged that "it is unclear whether even a complete overlap in staff and symmetry in spending permit extending contribution limits that undisputedly apply to a PAC that makes candidate contributions to one that does independent expenditures." *Id.* at 409 (citing *Emily's List v. Fed. Election Comm'n*, 581 F.3d 1, 12 (D.C. Cir. 2009)). Nevertheless, the unchallenged evidence indicating that VRLC-FIPE and VRLC-PC had a "fluidity of funds" made it

Appellees' Notice of Supplemental Authority Pursuant to Fed. R. App. P. 28(j) 2, April 14, 2014, ECF No. 199.

impossible to ensure "that contributions to [VRLC-FIPE], intended for independent expenditures, are truly aimed at that purpose when spent." *Id.* at 409-10 (internal quotation marks omitted). As a result, the district court rejected VRLC-FIPE's as-applied challenge to Vermont's limitations on contributions.

## LEGAL STANDARDS

### I.    Summary Judgment

This Court reviews a summary judgment decision *de novo* and applies "the same standards that govern the district court's consideration of the motion." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010).

### II.    Scope of Review

#### A.    Vagueness

We first must clarify the scope of the legal challenge before us. VRLC describes its suit as both a facial and an as-applied challenge and argues that the "mass media," "electioneering communication,"

and "political committee" provisions are unconstitutionally vague facially and as applied. However, it is not the label that matters in deciding what standard applies. *Doe v. Reed*, 561 U.S. 186, 194 (2010). The inquiry is whether "plaintiffs' claim and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs." *Id.*

VRLC has done little, if anything, to present its as-applied vagueness challenge. *See Vt. Right to Life Comm., Inc.*, 875 F. Supp. 2d at 387 (noting that VRLC "offer[ed] minimal explanation of how the law is unconstitutional as it pertains to the specific communications it either has made or hopes to publish"). The only semblance of an as-applied challenge on appeal is VRLC's claim that it wants to publish speech that it fears "promotes, supports, attacks, or opposes" a clearly identified candidate. Appellants' Br. 24. "But such groups constitute a broad range of entities . . . . The claim therefore seems 'facial' in that it is not limited to plaintiff's particular

21

case, but challenges application of the law more broadly." *Iowa Right to Life Comm., Inc. v. Tooker*, 717 F.3d 576, 588 (8th Cir. 2013) (citing *Reed*, 561 U.S. at 194), *cert. denied*, 134 S. Ct. 1787 (2014) (internal quotation marks omitted). Moreover, VRLC describes its "as-applied and facial vagueness challenges" as "largely parallel," Appellants' Br. 32, and its request that the provisions be declared unconstitutional and enjoined from enforcement certainly reaches beyond VRLC's particular circumstances.

We recognize the preference for as-applied challenges, *United States v. Farhane*, 634 F.3d 127, 138 n.9 (2d Cir. 2011), but where plaintiffs asserting both facial and as-applied challenges have failed to "[lay] the foundation for an as-applied challenge," courts have proceeded to address the facial challenge, *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 475 (7th Cir. 2012); *accord Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1021-22 (9th Cir. 2010) (applying facial standard where the plaintiff did "not provide any

evidence to support an as-applied challenge" or "distinguish between its facial and as-applied claims in its briefs").

VRLC has not presented any legal arguments or facts specific to an as-applied vagueness challenge. We will therefore analyze these claims under the standards governing facial challenges.

## B. First Amendment

Plaintiffs also argue that Vermont's political committee, mass media, and electioneering communication definitions and the disclosure regime violate the First Amendment right to free speech "as applied and facially." In support of the claim that these provisions are "facially unconstitutional," VRLC relies on cases dealing with overbreadth. Appellants' Br. 101-03 (citing *United States v. Williams*, 553 U.S. 285, 292-93 (2008); *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)); s*ee also Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984) ("There are two quite different ways in which a statute may be considered invalid 'on its

face' – either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'").[8]

VRLC's facial and as-applied challenges are substantively identical. VRLC contends that Vermont's PAC disclosure requirements are overbroad – and therefore facially unconstitutional – because, according to VRLC, Vermont may only impose a disclosure regime on an organization if the organization's "major purpose" is to advance a candidacy. VRLC additionally argues that Vermont's "electioneering communication" and "mass media" disclosure and identification requirements are overbroad because, according to VRLC, Vermont cannot impose a disclosure or identification requirement on speech unless that speech is "express

---

[8] "A law is unconstitutionally overbroad if it punishes a substantial amount of protected free speech, judged in relation to its plainly legitimate sweep." *United States v. Farhane*, 634 F.3d 127, 136 (2d Cir. 2011) (internal quotation marks and alteration omitted). An overbroad law can never be validly enforced unless a limiting construction is available. *Id*. As a result, a party may challenge a law as being overbroad even if a narrower law might have validly prohibited her conduct.

advocacy" or broadcast speech that is run shortly before an election and targeted at the relevant electorate. VRLC simultaneously asserts that these provisions are unconstitutional as applied to it because the organization does not have the major purpose to advance a candidacy and does not engage in express advocacy.

Because the merits of VRLC's arguments do not depend on whether they have been raised as part of an as-applied or facial overbreadth challenge, we consider both claims together. VRLC-FIPE has separately brought an as-applied challenge against Vermont's contribution limits, which will be addressed separately.

**"ELECTIONEERING COMMUNICATIONS" AND "MASS MEDIA ACTIVITIES"**

VRLC contends that the Vermont statutory disclosure provisions concerning electioneering communications and mass media activities (i) violate the Fourteenth Amendment's due process guarantee due to vagueness, and (ii) violate the First Amendment's free speech guarantee. Like the district court, we conclude that the provisions are constitutional.

**I.   Vagueness**

The due process clauses of the Fifth and Fourteenth Amendments forbid enforcement of a statute if "the statute . . . fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010) (internal quotation marks omitted). Although this standard is applied more stringently where the rights of free speech or free association are implicated, "perfect clarity and

precise guidance have never been required even of regulations that restrict expressive activity." *Id.* at 19 (internal quotation marks omitted). A facial vagueness challenge will succeed only when the challenged law can never be validly applied. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982).

### A.   "Promotes or Supports . . . or Attacks or Opposes"

The "electioneering communication" definition, which triggers disclosure requirements, uses the words "promotes," "supports," "attacks," and "opposes." Vt. Stat. Ann. tit. 17, § 2901(6). VRLC contends that these terms are impermissibly vague. We disagree; this language is sufficiently precise.

In *McConnell*, the Supreme Court explained that these terms are not unconstitutionally vague in a similar context, because they "clearly set forth the confines within which potential party speakers must act in order to avoid triggering the provision." 540 U.S. at 170 n.64.

The *McConnell* Court included an additional basis for its conclusion, the nature of the speaker being regulated: "This is particularly the case here, since actions taken by political parties are presumed to be in connection with election campaigns." *Id.* A communication that refers to a "clearly identified candidate for office" is also presumably made in connection with election campaigns. Thus, *McConnell* applies with equal force here: the Vermont definition of "electioneering communication" requires a reference to a clearly identified candidate, and a communication referring to a clearly identified candidate is presumed to be in connection with an election campaign.[9] Also, the language of *McConnell* indicates that the result did not depend on the presumption. Indeed, the First Circuit has applied *McConnell* to hold that use of the terms "promote," "support," and "oppose" was not unconstitutionally vague without apparent reference to the

---

[9] This does not apply to the "support" or "oppose" language in the PAC definition, discussed below.

28

additional reasons of *McConnell*. *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 63-64 (1st Cir. 2011).

VRLC points to a concurring opinion by Justice Scalia in which he described the issue of whether an advertisement "promotes, attacks, supports, or opposes the named candidate," as "inherently vague," asking, "Does attacking the king's position attack the king?" *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 493 (2007) (Scalia, J., concurring). But the controlling opinion rejected Justice Scalia's concerns. *Id.* at 474 n.7. Nor does the electioneering communication definition here include the term "influence," which other courts have found requires a limiting construction to avoid impermissible vagueness. *See, e.g.*, *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 664 (5th Cir. 2006), *cert. denied*, 549 U.S. 1112 (2007); *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 712-13 (4th Cir. 1999), *cert. denied*, 528 U.S. 1153 (2000).

**B.** **"On Behalf Of"**

Electioneering communications "paid for by or *on behalf of* a political committee or political party" must also identify certain contributors. Vt. Stat. Ann. tit. 17, § 2972(c) (emphasis added). VRLC urges that the phrase "on behalf of" is unconstitutionally vague. It is not.

Vermont's previous campaign finance law – and the law considered by the district court below – required that electioneering communications identify "the name of the candidate, party, or political committee by or on whose behalf the same is published or broadcast." Vt. Stat. Ann. tit. 17, § 2892 (repealed 2014). The district court rejected Plaintiffs' vagueness challenge to the phrase "on whose behalf" in the previous electioneering communication reporting provision, concluding that the phrase "contemplates an agreement between the sponsor and the beneficiary to run the communication." *Vt. Right to Life Comm., Inc.*, 875 F. Supp. 2d at 390.

The current law now requires that "an electioneering communication *paid for* by or on behalf of a political committee or political party shall contain the name of" certain contributors. Vt. Stat. Ann. tit. 17, § 2972(c) (emphasis added). "On behalf of" now clearly modifies "paid for." The most natural reading of "on behalf of" in the context of this provision, then, is the passing of money through a third party such that the advocacy is "paid for" by a third party who was hired by the PAC to place the electioneering communication. *See Farhane*, 634 F.3d at 142 ("[W]e do not look at statutory language in isolation to determine if it provides adequate notice of conduct proscribed or permitted. Rather, we consider language in context."). Such ads would still be paid for "on behalf of" the PAC and regulated by Vermont's electioneering communication identification requirements. So construed, the provision is clear and not impermissibly vague.

**C.   "Expenditure"**

VRLC contends that the definition of the statutory term "expenditure" is unconstitutionally vague.  "Expenditure" is used in the mass media activity statute.[10]  As noted above, "expenditure" is defined as "a payment, disbursement, distribution, advance, deposit, loan, or gift of money or anything of value, paid or promised to be paid, for the purpose of *influencing an election*, advocating a position on a public question, or *supporting or opposing* one or more candidates."  Vt. Stat. Ann. tit. 17, § 2901(7) (emphases added).  VRLC challenges both italicized phrases.  As discussed above, the Supreme Court has held that "supporting" and "opposing" are not unconstitutionally vague.  *McConnell*, 540 U.S. at 170 n.64 (concluding that the words promote, support, attack, and oppose are not unconstitutionally vague).

---

[10] VRLC also asserts that the PAC definition is vague where it too uses the term "expenditure."  This challenge will be dealt with below when addressing the constitutional challenges to Vermont's PAC definition.

As also mentioned above, the Vermont Supreme Court has supplied a narrowing interpretation to the phrase "influencing an election" in the "political committee" definition. As that court explained, the "influencing" phrase "refer[s] only to [the] class of advocacy" covered by the phrase "supporting or opposing": "they both refer to advocacy to vote in a particular way in an election." *Green Mountain Future*, 86 A.3d at 997. The term "influencing" simply embraces a broader set of methods (*i.e.*, not only where the identification of the candidate is explicit, but also where absent such reference, it is nonetheless clear to the objective observer that the purpose of an advertisement is to persuade voters to vote yes or no on a candidate). *Id.* at 997-98. The Vermont Supreme Court explained that:

> The purpose of the methods used by [Green Mountain Future] in this case was very clear, partially because [Green Mountain Future] identified the candidate by name and included his pictures in the advertisements. If in the next case,

33

however, an organization ran advertisements in the same way and in the same timeframe with respect to an election without mentioning the candidate's name, and without including a picture of the candidate, we would be reluctant to hold that the statute as narrowed by the trial court could cover this method—even if an objective observer would find the purpose to be the same as when the candidate name and picture was used. As in this case, the objective observer should look to multiple factors: for example, the timing of the advertisement, the images used in the advertisement, the tone of the advertisement, the audience to which the advertisement is targeted, and the prominence of the issue(s) discussed in the advertisement in the campaign. But where the objective observer concludes that the purpose of an advertisement is to influence voters to vote yes or no on a candidate, the "influencing an election" language should apply. Other than in this circumstance, we agree with the trial court's narrowing construction.

*Id.* at 998 (footnote omitted). In other words, if an organization ran

an advertisement "for the objective purpose of persuading

someone" to vote for or against a candidate, but the advertisement

34

did not identify a candidate in that election, it could still fall within Vermont's definition of "influencing an election."  *Id.* at 998.

The expansion of the "influencing" language in the Vermont Supreme Court's *Green Mountain Future* decision has no impact here. A communication only qualifies as a mass media activity if it "includes the name or likeness of a *clearly identified candidate*."  Vt. Stat. Ann. tit. 17, § 2901(11) (emphasis added).  If a communication does not qualify as a mass media activity, it does not trigger the disclosure statute in which the term "expenditure" is used.  *See* Vt. Stat. Ann. tit. 17, § 2971(a)(1) ("[A] person who makes *expenditures* for any one *mass media activity* totaling $500.00 or more . . . within 45 days before a primary, general, county, or local election shall, for each activity, file a mass media report." (emphases added)).  As a result, the "influencing" language in the expenditure definition has no force in this context.  Because the "supporting or opposing" language in the statutory definition of "expenditure" is not vague

and the "influencing" language in its definition has no relevance to the mass media activity statute, we reject VRLC's vagueness challenge to the term "expenditure" as it is used in the mass media activity statute.

## II.    First Amendment

### A.    Express Advocacy

VRLC contends that Vermont cannot impose a disclosure or identification requirement on speech unless that speech is "express advocacy" or broadcast speech that is run shortly before an election and targeted at the relevant electorate.    Because Vermont's definitions of regulated "electioneering communications" and "mass media activities" apply to speech that falls outside of these categories, VRLC contends that they violate the First Amendment. Although VRLC's position finds some support in pre-*Citizens United* decisions, it cannot be squared with *Citizens United*.

In *Buckley*, the Supreme Court responded to vagueness and overbreadth challenges by adopting a narrow construction of the term "political committee" in the Federal Election Campaign Act, which required "political committees" and other persons to disclose their "expenditures." 424 U.S. at 80. Specifically, the Supreme Court interpreted "political committee" to "only encompass organizations that are under the control of a candidate or the *major purpose* of which is the nomination or election of a candidate" and reasoned that the "[e]xpenditures of candidates and of 'political committees' so construed can be assumed to fall within the core area sought to be addressed by Congress." *Id*. at 79 (emphasis added). The Supreme Court further explained that "when the maker of the expenditure is . . . an individual other than a candidate or a group other than a 'political committee,'" the term "expenditure" should "reach only funds used for communications that *expressly advocate*

the election or defeat of a clearly identified candidate." *Id.* at 79-80 (emphasis added).[11]

Although *Buckley*'s narrowing construction arose in the context of constitutional vagueness and overbreadth challenges, subsequent Supreme Court decisions suggest that the limits the Court imposed on the statute were not coextensive with

[11] In *VRLC I*, this Court relied on *Buckley*'s distinction between express and issue advocacy to hold that a previous version of the Vermont disclosure statute was "unconstitutional on its face. The section apparently requires reporting of expenditures on radio or television advertisements devoted to pure issue advocacy in violation of the clear command of *Buckley*." 221 F.3d at 389 (footnote omitted). As described in the text, *McConnell* did not read *Buckley* as suggesting "that a statute that was neither vague nor overbroad would be required to toe the same express advocacy line." 540 U.S. at 192. As a result, it is unclear whether *VRLC I*'s holding that "pure issue advocacy" cannot be the subject of a valid governmental regulation remains viable. *See Minn. Citizens Concerned for Life, Inc. v. Kelley*, 427 F.3d 1106, 1111 (8th Cir. 2005) (noting that challenger's position found support in *VRLC I*, but rejecting challenger's position because the "court must follow the latest pronouncement of the Supreme Court," which had become *McConnell*). In any event, as described in the text, the *Citizens United* Court clarified that disclosure requirements can sweep more broadly than "express advocacy." Even if it were not affected by *Citizens United*, *VRLC I* does not apply here, as Vermont's more recent statute does not reach *pure* issue advocacy. Speech does not qualify as an "electioneering communication" unless it refers to a "clearly identified candidate," and "promotes," "supports," "attacks," or "opposes" a candidate. Vt. Stat. Ann. tit. 17, § 2901(6). And the mass media activity reporting requirement is not triggered absent an "expenditure" (which requires a purpose of "supporting or opposing one or more candidates") and "mass media activity" (which requires a "clearly identified candidate"). *Id.* § 2971(a)(1), (b).

38

constitutional limits. *See McConnell*, 540 U.S. at 191-92 ("[A] plain reading of *Buckley* makes clear that the express advocacy limitation . . . was the product of statutory interpretation rather than a constitutional command."). For instance, the *McConnell* Court concluded, without indicating that the First Amendment would prohibit further disclosure requirements, that the government could regulate broadcast speech clearly identifying a candidate that is aired in a specific time period and targeted at the relevant electorate. *Id.* at 194. The Supreme Court explained that it was not drawing "a constitutional boundary that forever fixed the permissible scope of provisions regulating campaign-related speech." *Id.* at 192-93.

*Citizens United* removed any lingering uncertainty concerning the reach of constitutional limitations in this context. In *Citizens United*, the Supreme Court expressly rejected the "contention that the disclosure requirements must be limited to speech that is the functional equivalent of express advocacy," because disclosure is a

less restrictive strategy for deterring corruption and informing the electorate. 558 U.S. at 369; *accord Buckley*, 424 U.S. at 66-68.[12] The Court explained that even if Citizens United's "ads only pertain to a commercial transaction," the government could constitutionally require identification and disclosure with respect to the advertisements because "the public has an interest in knowing who is speaking about a candidate shortly before an election." *Id.*

As a result, the Vermont statutes' extension beyond express advocacy does not render them unconstitutional.

**B.     Standard of Review**

Although the Vermont statutes' reach beyond express advocacy does not render them unconstitutional, the statutes remain

---

[12] The Seventh Circuit has recently interpreted this portion of *Citizens United* as confined to its "specific and narrow context." *Wis. Right to Life, Inc. v. Barland*, No. 12-2915, 2014 WL 1929619, at *29-33 (7th Cir. May 14, 2014). We disagree. There is no indication that the *Citizens United* ruling depended on the type of disclosure requirements it upheld, and the Court specifically referred to three other instances where disclosure requirements were upheld. *Citizens United*, 558 U.S. at 369 (citing *Buckley*, 424 U.S. at 75-76; *McConnell*, 540 U.S. at 321; and *United States v. Harriss*, 347 U.S. 612, 625 (1954)).

subject to "exacting scrutiny," which "requires a substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Id.* at 366-67 (internal quotation marks omitted). A governmental interest in "providing the electorate with information about the sources of election-related spending" may justify disclosure requirements. *Id.* at 367 (internal quotation marks and brackets omitted). Applying exacting scrutiny, the Supreme Court has upheld a federal statutory provision that required "televised electioneering communications funded by anyone other than a candidate" to include an identification statement stating "that '_____ is responsible for the content of this advertising.'" *Id.* at 366-71.[13]

---

[13] In a decision that predated *Citizens United*, the Second Circuit stated that "[m]andatory disclosure requirements may represent a greater intrusion into the exercise of First Amendment rights of freedom of speech and association than do reporting provisions . . . ." *VRLC I*, 221 F.3d at 387 (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 355 (1995)). This view now appears inconsistent with *Citizens United*.

Review of the monetary threshold for requiring disclosure of a contribution or expenditure is highly deferential. In *Buckley*, the Supreme Court suggested that a disclosure threshold will be upheld unless it is "wholly without rationality," specifically stating that it would not require the legislature "to establish that it has chosen the highest reasonable threshold." 424 U.S. at 83.

**C.    Application**

The electioneering communication and mass media activity statutes are within the scope of regulation permitted under *Citizens United*. An electioneering communication, which under section 2972(2) must identify the speaker, includes any "communication that refers to a clearly identified candidate for office and that promotes or supports a candidate for that office or attacks or opposes a candidate for that office, regardless of whether the communication expressly advocates a vote for or against a candidate . . . ." Vt. Stat. Ann. tit. 17, § 2901(6). This definition by its terms only reaches

communications that take a position on an actual candidacy. Also, although the provision is not explicitly time limited, an individual can only be a "candidate" within the meaning of the statute once she has taken an "affirmative action" to become a candidate for office by accepting $500 of contributions, making $500 of expenditures, filing a petition for nomination, being nominated, or announcing her candidacy. *Id.* § 2901(1). Thus, the statute will only apply during a campaign for public office. As a result, the electioneering communication reporting requirements have a substantial relation to the public's "interest in knowing who is speaking about a candidate shortly before an election." *Citizen's United*, 558 U.S. at 369; *see also* Act of Jan. 23, 2014, 2014 Vt. Acts & Resolves No. 90, Sec. 1(15) ("Increasing identification information in electioneering communications will enable the electorate to evaluate immediately the speaker's message and will bolster the sufficiently important

43

interest in permitting Vermonters to learn the sources of significant influence in our State's elections.").

Admittedly, the mass media reporting requirements, because they do not directly inform the public about the identity of the speaker, are less tailored to the asserted public interest in information about the sources of election-related spending than an identification requirement. But notwithstanding this less direct nexus, the requirement is still substantially related to a permissible informational interest. The mass media provision is explicitly limited in time and scope: (a) a mass media activity will only trigger the reporting requirement if it occurs "within 45 days before a primary, general, county, or local election," Vt. Stat. Ann. tit. 17, § 2971(a)(1); (b) a communication only qualifies as a mass media activity if it includes "the name or likeness of a clearly identified candidate for office," *id.* § 2901(11); and (c) a report is only required when "expenditures" (which, under section 2901(7), must have the

"purpose of influencing an election, advocating a position on a public question, or supporting or opposing a candidate") "for any one mass media activity total[] $500.00 or more," *id.* § 2971(a)(1).

These targeted mass media disclosure requirements are substantially related to a sufficiently important governmental interest. By alerting candidates whose image or name is used, the reporting requirement will identify the source of election-related information and encourage candidate response. And by requiring that the speaker notify the candidate whose image or name was used, the provision brings so-called "whisper campaigns" into the sunlight[14] and also helps ensure that candidates are aware of and have an opportunity to take a position on the arguments being made

---

[14] As an example of so-called "whisper campaigns," there have been (still unproven) accusations that during the Republican presidential primary race in 2000, groups supporting a candidate arranged for mass phone calls that strongly suggested that John McCain had an illegitimate child. *See* Richard Gooding, *The Trashing of John McCain*, VANITY FAIR, Nov. 2004, *available at* http://www.vanityfair.com/politics/features/2004/11/mccain200411. If such conduct occurred in Vermont, the group that arranged the phone calls would be required to report it to the candidate being attacked. This would allow the candidate to more quickly and effectively respond.

in their name. This public benefit is in line with the informational interest approved by *Citizens United*. The requirement that such reports be filed within twenty-four hours of the communication is also directly related to the State's informational interest given the need to rapidly address election-related speech in the final weeks of a campaign.

As a result, the Vermont statutes governing electioneering communications and mass media activities survive exacting scrutiny.

**"POLITICAL COMMITTEE" DEFINITION AND DISCLOSURE REQUIREMENTS**

VRLC contends that the Vermont "political committee" definition (i) violates the Fourteenth Amendment's due process guarantee because of vagueness, and (ii) violates the First Amendment's free speech guarantee. Like the district court, we conclude that the statute is constitutional.

**I.     Vagueness**

As noted above, VRLC asserts that the phrases "supporting or opposing" and "influencing an election" are unconstitutionally vague as used in the PAC definition. These phrases are either directly incorporated into the definition of "political committee" or are indirectly incorporated, through the definitions of "contribution" or "expenditure." As explained above, the phrase "supporting or opposing" is not unconstitutionally vague. *See McConnell*, 540 U.S. at 170 n.64.

Also explained above, a Vermont Superior Court has interpreted the phrase "influencing an election" such that it is co-extensive with the "supporting or opposing" language. *Green Mountain Future*, Civ. Div. No. 758-10-10 Wncv, slip op. at 12 (Wash. Super. Ct. June 28, 2011). We acknowledge that the narrowing construction provided by the Vermont Superior Court and relied on by Judge Sessions differs from the narrowing construction more recently provided by the Vermont Supreme Court. This difference, however, does not change the result. The Vermont Supreme Court merely broadened the Superior Court's interpretation in the sense that it read "influence an election" to also embrace communications that do not identify a specific candidate. *Green Mountain Future*, 86 A.3d at 997-98. The Vermont Supreme Court explained that the "influencing" phrase still "refer[s] only to [the] class of advocacy" covered by the phrase "supporting or opposing." *Id.* at 997.

48

The fact that "influencing an election" covers communications that do not necessarily identify a specific candidate does not make the phrase unconstitutionally vague. In *McConnell*, 540 U.S at 184, the U.S. Supreme Court upheld against a vagueness challenge a definition of "Federal election activity" that included:

> a public communication that refers to a clearly identified candidate for Federal office (regardless of whether a candidate for State or local office is also mentioned or identified) and that promotes or supports a candidate for that office, or attacks or opposes a candidate for that office (regardless of whether the communication expressly advocates a vote for or against a candidate).

2 U.S.C. § 431(20)(A)(iii). Despite the statute's explicit application beyond express advocacy, the Supreme Court held that it was not unconstitutionally vague. *McConnell*, 540 U.S. at 170 n.64. Vermont's use of "influencing" only describes speech that the federal statute captures with the terms "promotes," "supports," "attacks," and "opposes." Because the phrase "influencing" in the

Vermont statute is coextensive with the federal statute, Vermont's statute is also not unconstitutionally vague.

**II.    First Amendment**

**A.    "Major Purpose"**

As noted above, VRLC contends that Vermont's PAC disclosure requirements violate the First Amendment, arguing that Vermont may only impose a disclosure regime on an organization if "the major purpose" of the organization is to advance a candidacy.

Prior to *Citizens United*, the Fourth Circuit held that an organization could only be subjected to a political committee regulatory regime if the organization met "the major purpose" test. *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 288-89, 295 (4th Cir. 2008) ("*NCRL III*"). However, since *Citizens United* and its approval of extensive disclosure regimes, two Circuits have concluded that the major purpose test is not a constitutional requirement. *See Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 490 (7th Cir. 2012)

("[T]he line-drawing concerns that led the [Supreme] Court to adopt the major purpose limitation for contribution and expenditure limits in *Buckley* do not control our overbreadth analysis of the disclosure requirements . . . .");[15] *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 59 (1st Cir. 2011) ("We find no reason to believe that this so called 'major purpose' test, like the other narrowing constructions adopted in *Buckley*, is anything more than an artifact of the Court's construction of a federal statute."); *see also Human Life of Wash., Inc.*, 624 F.3d at 1009-11 (concluding that *Buckley* did not lay down a bright-line test requiring that *the* major purpose of an organization must be to support or oppose a candidate, and that a state law

---

[15] The Seventh Circuit has since distinguished *Center for Individual Freedom v. Madigan* by applying the "major purpose" limitation to narrow a campaign finance regulation it found would otherwise violate the First Amendment. *Barland*, 2014 WL 1929619, at *33, 36-37. Although *Barland* seems to accept that the major purpose limitation is not a "constitutional command," it asserts that the limitation remains an "important check" to determine whether a disclosure rule is closely tailored to the public's information interest. *Id.* at *36 (internal quotation marks omitted). We believe it is unnecessary here to resort to a major purpose limitation to hold that the disclosure regime satisfies exacting scrutiny.

51

regulating organizations with *a* major purpose of engaging in such actions was constitutional).

We join the Circuits that have considered PAC definitions in this context after *Citizens United* and hold that the Constitution does not require disclosure regulatory statutes to be limited to groups having "the major purpose" of nominating or electing a candidate. The "express advocacy" analysis above applies with equal force to "the major purpose" analysis here. When the *Buckley* Court construed the relevant federal statute to reach only groups having "the major purpose" of electing a candidate, it was drawing a statutory line. *See McConnell*, 540 U.S. at 191-93. It was not holding that the Constitution forbade any regulations from going further. *Id.*

**B.     Standard of Review**

Although Vermont's PAC statutes are not rendered unconstitutional because they reach beyond organizations having the "major purpose" of nominating or electing a candidate, they

52

remain subject to the appropriate degree of constitutional scrutiny.

VRLC argues that "[s]trict scrutiny applies to government's defining an organization as a political committee – or whatever label a jurisdiction uses – and thereby imposing political-committee burdens." Appellants' Br. 45. In essence, VRLC asks this Court to aggregate the various statutory provisions that apply to a Vermont "political committee," decide that these provisions add up to an "onerous burden," and conclude from this that the definition of a Vermont political committee must be evaluated using strict scrutiny.

But as the Fourth Circuit has recently explained:

> [The *Citizens United*] Court used the word "onerous" in describing certain PAC-style obligations and restrictions [but] . . . . the Court distinguished its application of the strict scrutiny standard to expenditure restrictions from the exacting scrutiny standard applicable to disclosure requirement provisions . . . . In sum, we conclude that even after *Citizens United*, it remains the law that provisions imposing disclosure obligations are reviewed under

the intermediate scrutiny level of "exacting scrutiny."

*The Real Truth About Abortion, Inc. v. Fed. Election Comm'n*, 681 F.3d 544, 549 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 841 (2013); *accord Wis. Right to Life, Inc. v. Barland*, No. 12-2915, 2014 WL 1929619, at *33 (7th Cir. May 14, 2014) (applying exacting scrutiny to review rule that imposed "PAC-like disclosure program" on "independent disbursement organizations"); *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792-93 (10th Cir. 2013), *cert. denied*, 2014 WL 2011565 (May 19, 2014); *Human Life of Wash. Inc.*, 624 F.3d at 1012-13.

Vermont's definition of "political committee," which is then used to impose disclosure obligations, does not require strict scrutiny review. A defined term such as "political committee" is simply a useful drafting tool. The definition sets out the domain of a series of separate statutory provisions. For example, the statute currently defines "political committee" in section 2901(13), then subjects every "political committee" to disclosure requirements in

54

section 2964. The statute could be rewritten to dispense with the defined term "political committee" by making the disclosure requirements a standalone provision. The same process could be followed with every other provision, including the contribution limitations in section 2941(a)(4). This process would not alter the substance of the statute, and the resulting statute likely would be unwieldy; it would be more difficult to apply and review. But it would lack a "political committee" definition that could be subjected to the type of challenge envisioned by VRLC.

It is the challenged regulation, not the PAC definition, therefore, that determines what level of scrutiny should apply. VRLC highlights the following obligations that apply to an organization once it is defined as a political committee: registration, recordkeeping necessary for reporting, and reporting requirements. It asserts these "are the very burdens that are 'onerous' as a matter of law." Appellants' Br. 43. These requirements amount to the

establishment of a disclosure regime. As a result, we, like the district court, apply exacting scrutiny to the "political committee" definition as used to impose the registration and disclosure requirements here.[16] *Vt. Right to Life Comm., Inc.*, 875 F. Supp. 2d. at 393; *see also Yamada v. Weaver*, 872 F. Supp. 2d 1023, 1048 (D. Haw. 2012) (collecting cases that "analyzed various definitions of 'political committee,' which include the burdens associated with such classification, and considered them to be 'disclosure requirements'").

**C.    Application**

Judge Sessions correctly found that Vermont's PAC definition, in the context of disclosure requirements, survives exacting scrutiny. *Vt. Right to Life Comm., Inc.*, 875 F. Supp. 2d at 396-97. Vermont's regime only calls for disclosures of "contributions" and

---

[16] Although there may be an open question as to what level of scrutiny should apply where the political committee definition is used to impose the burden of contribution limits, we, like the district court, do not find a need to reach that question here. VRLC has not challenged the contribution limits and expressly stated in its brief that such limits were "immaterial" for the purpose of its challenge to the political committee definition.

"expenditures," both of which are defined terms that require a purpose to promote or oppose a candidacy. Vt. Stat. Ann. tit. 17, § 2901(4), (7). In other words, Vermont PACs need only disclose transactions that have the purpose of supporting or opposing a candidate.[17] The disclosure regime is substantially related to the recognized governmental interest in "providing the electorate with information about the sources of election-related spending." *Citizens United*, 558 U.S. at 367 (internal quotation marks omitted).

The definition also reaches groups only once they have accepted contributions of $1,000 or more and made expenditures of $1,000 or more in any two-year general election cycle for the purpose of supporting or opposing one or more candidates. *See* Vt. Stat. Ann. tit. 17, § 2901(13). This is different from the Wisconsin regulation struck down by the Seventh Circuit that imposed a disclosure regime on "*every* independent group that crosses the very

[17] The statutory scheme only asks for information that PACs would track even absent a legal requirement. A contributor database is a valuable asset for a PAC, and few organizations would fail to maintain an accounting of its expenditures.

low $300 threshold in express-advocacy spending." *Barland*, 2014 WL 1929619, at *35 (emphasis in original). The Seventh Circuit itself relied on regulatory differences to distinguish *Barland* from its earlier decision to uphold Illinois' disclosure system because that political committee definition covered "only groups that accept contribution or make expenditures 'on behalf of or in opposition to' a candidate or ballot initiative." *Id.* at *33 (quoting *Madigan*, 697 F.3d at 488). Factual distinctions aside, we find the Seventh Circuit's reasoning in *Center of Individual Freedom v. Madigan* the more persuasive: "[O]ur inquiry depends on whether there is a substantial relation between [Vermont's] interest in informing its electorate about who is speaking before an election and [its] regulation of campaign-related spending by groups whose major purpose is *not* electoral politics. We find that there is." 697 F.3d at 491 (emphasis in original).

Moreover, Vermont's PAC definition is limited to organizations that make expenditures *and receive* contributions. Vt. Stat. Ann. tit. 17, § 2901(13). This definition has a substantial relation to Vermont's legitimate informational interests. Defining PACs as entities that receive contributions and then imposing disclosure requirements simply addresses the situation where, for example, a corporation creates an entity with an opaque name – say, "Americans for Responsible Solutions" – contributes money to that entity, and has that entity engage in speech on its behalf. By requiring that entity to meet reporting and organizational requirements, Vermont can ensure that the underlying speaker is revealed. If the same corporation wishes to engage in independent expenditures, however, it is free to do so without limitation and without falling under the PAC definition and disclosure requirements as long as it does not receive contributions.

Vermont's tailored disclosure regime is distinguishable from the perpetual reporting and organizational requirements that raised concern for the Eighth Circuit. *See Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 867-69, 872-73 (8th Cir. 2012) (en banc) (addressing Minnesota statute that required any association seeking to engage in independent expenditures to set up a PAC). The Eighth Circuit expressed doubt over Minnesota's reporting requirements, which were "untethered from continued speech." *Id.* at 876. Similarly, in *Iowa Right to Life Committee, Inc. v. Tooker*, the Eighth Circuit rejected an Iowa statute on the basis of its requirement that groups "file perpetual, ongoing reports." 717 F.3d 576, 597 (8th Cir. 2013), *cert. denied*, 134 S. Ct. 1787 (2014). By contrast, the Vermont statute at issue only considers a group a "political committee" and subjects it to reporting requirements if it receives contributions and makes expenditures of $1,000 or more in a two-year general election cycle. Vt. Stat. Ann. tit. 17, § 2901(13). The reporting requirement,

therefore, is not "perpetual"; it is contingent upon qualifying as a PAC based on a group's ongoing contributions and expenditures. In addition, the Vermont statute recognizes the ability of a PAC to file a "final report" that lists all of its contributions and expenditures and terminates its campaign activities. *Id.* § 2965(b).

VRLC-FIPE also contends that the $100 threshold for reporting a contribution, *see id.* § 2963(a)(1), is too low. In *Buckley*, the Supreme Court upheld a disclosure threshold after observing that it was not "wholly without rationality." 424 U.S. at 83. The Ninth Circuit has applied a "wholly without rationality" standard in evaluating a disclosure threshold, although it evaluated the overall scheme using an "exacting scrutiny" standard. *Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*, 556 F.3d 1021, 1031, 1033-34 (9th Cir. 2009).[18] Regardless of the applicable standard, the

---

[18] Although VRLC-FIPE contends that the Fourth Circuit has applied a more stringent test to a disclosure threshold, it is not clear whether the Fourth Circuit was inquiring into the actual dollar value that would trigger a report. *N.C. Right*

threshold is not so low as to prompt any real constitutional doubt. *See Nat'l Org. for Marriage v. McKee*, 669 F.3d 34, 40-41 (1st Cir. 2012) (upholding $100 threshold); *Family PAC v. McKenna*, 685 F.3d 800, 809 n.7 (9th Cir. 2012) (approving disclosure requirements triggered by $25 and $100 contributions, and noting that "[i]t is far from clear . . . that even a zero-dollar disclosure threshold would succumb to exacting scrutiny"). We thus also sustain the district court's approval of the disclosure threshold.

**POLITICAL COMMITTEE CONTRIBUTION LIMITS**

Vermont law provides that a "political committee . . . shall not accept contributions totaling more than $2,000.00 from a single source, political committee or political party in any two-year general election cycle." Vt. Stat. Ann. tit. 17, § 2805(a).[19] We have previously held that it is "unquestionably constitutional" for the State to limit

*to Life Comm. Fund for Indep. Political Expenditures v. Leake*, 524 F.3d 427, 439 (4th Cir. 2008).

[19] As mentioned in note 4 *supra*, new contribution limits will take effect on January 1, 2015.

contributions to groups "making contributions to or coordinated expenditures with candidates for office." *Landell*, 382 F.3d at 140. As a result, Vermont may impose contribution limits on VRLC-PC, an entity that makes contributions to candidates. The only question here is whether the statute's contribution limits are unconstitutional as applied to VRLC-FIPE, which claims to be an independent-expenditure-only PAC.

**I.    Campaign Finance Standards of Review**

**A.    Expenditure Limits**

Strict scrutiny applies when the government seeks to ban or limit political expenditures. *Ognibene v. Parkes*, 671 F.3d 174, 182 (2d Cir. 2012). In order for a restriction to survive strict scrutiny, the government must show that the restriction "furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United*, 558 U.S. at 340 (internal citations and quotation marks omitted).

The Supreme Court has recognized only one interest that is sufficiently compelling to justify an expenditure limitation: preventing the actuality or appearance of *quid pro quo* corruption. *Id.* at 358-59. It has expressly rejected any governmental interest in preventing the appearance of influence or access, *id.* at 359-60, limiting distortions of the marketplace of ideas, *id.* at 349-50, protecting the dissenting shareholders of corporate speakers, *id.* at 361-62, equalizing the resources of candidates, *Buckley*, 424 U.S. at 56, or ensuring that government officials do not devote excessive time to raising money, *Randall*, 548 U.S. at 243, 245-46. The anti-corruption rationale cannot justify a limitation on expenditures that are not coordinated with any political campaign. *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806, 2826 (2011).

**B. Contribution Limits**

Contribution limits are "more leniently reviewed because they pose only indirect constraints on speech and associational rights."

*Ognibene*, 671 F.3d at 182-83. Contribution limitations or bans "are permissible as long as they are closely drawn to address a sufficiently important state interest." *Id.* at 183; *see also Green Party of Conn. v. Garfield*, 616 F.3d 189, 199 (2d Cir. 2010) (quoting *Fed. Election Comm'n v. Beaumont*, 539 U.S. 146, 162 (2003)). The Supreme Court recently stated that campaign finance restrictions must target *quid pro quo* corruption or its appearance in order to survive First Amendment scrutiny. *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1441-42, 1450 (2014).[20] Special deference is due to the legislature's selection of the precise contribution amount limits. *Ognibene*, 671 F.3d at 189.

---

[20] The Court also allowed for the possibility that such regulation could be justified as preventing circumvention of contribution limits. *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1452-53, 1457 (2014); *see also Ognibene v. Parkes*, 671 F.3d 174, 194-95 (2d Cir. 2012) (identifying as two interests that could justify contribution limitations: (1) an anti-corruption interest in avoiding *quid pro quo* corruption or the appearance of *quid pro quo* corruption; and (2) an "anti-circumvention interest in preventing the evasion of valid contribution limits.").

**II.    Independent-Expenditure-Only Groups**

In *Citizens United*, the Supreme Court declared that "'[t]he absence of prearrangement and coordination of an expenditure with the candidate or his agent not only undermines the value of the expenditure to the candidate, but also alleviates the danger that expenditures will be given as a *quid pro quo* for improper commitments from the candidate.'"  558 U.S. at 345 (quoting *Buckley*, 424 U.S. at 47); *see also Cal. Med. Ass'n v. Fed. Election Comm'n*, 453 U.S. 182, 203 (1981) (Blackmun, J., concurring in part and concurring in the judgment) ("*Cal. Med.*").  As we have noted, *see N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 487 (2d Cir. 2013), several Courts of Appeals have concluded that an anti-corruption rationale therefore cannot apply to contributions to groups that engage only in independent expenditures.  *See Wisc. Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 154 (7th Cir. 2011) ("*WRLC I*"); *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1118-21 (9th Cir. 2011);

*NCRL III*, 525 F.3d at 295. For example, the U.S. Court of Appeals for the District of Columbia stated that, in the context of groups that make independent expenditures only, the Supreme "Court has effectively held that there is no corrupting 'quid' for which a candidate might in exchange offer a corrupt 'quo.'" *SpeechNow.org v. Fed. Election Comm'n*, 599 F.3d 686, 694-95 (D.C. Cir. 2010) (en banc).

VRLC-FIPE urges that we follow these courts and hold that contribution limits may not be constitutionally applied to "independent expenditure" entities. But even if contribution limits would be unconstitutional as applied to independent-expenditure-only groups, VRLC-FIPE would not succeed here. The district court correctly concluded that based on the undisputed facts presented at summary judgment, VRLC-FIPE is enmeshed financially and organizationally with VRLC-PC, a PAC that makes direct contributions to candidates. Thus, because contribution limits are

constitutional as applied to VRLC-PC, we agree with the district court that they also may be applied to VRLC-FIPE.

In holding that independent expenditures cannot give rise to *quid pro quo* corruption, the Supreme Court focused on the "absence of prearrangement and coordination" when expenditures are independent. *Citizens United*, 558 U.S. at 345, 357-61; *see also Ala. Democratic Conference v. Broussard*, 541 F. App'x 931, 935 (11th Cir. 2013) (per curiam) ("In prohibiting limits on independent expenditures, *Citizens United* heavily emphasized the independent, uncoordinated nature of those expenditures, which alleviates concerns about corruption."). Although some courts have held that the creation of separate bank accounts is by itself sufficient to treat the entity as an independent-expenditure-only group, *see, e.g.*, *Emily's List v. Fed. Election Comm'n*, 581 F.3d 1, 12 (D.C. Cir. 2009),[21]

---

[21] Even the D.C. district courts, however, have not resolved whether *Emily's List* holds that a separate bank account alone is sufficient to allow for unlimited expenditures. *Compare Stop This Insanity, Inc. Emp. Leadership Fund v. Fed. Election Comm'n*, 902 F. Supp. 2d 23, 43 (D.D.C. 2012) ("When a single entity is allowed to

we do not believe that is enough to ensure there is a lack of "prearrangement and coordination." A separate bank account may be relevant, but it does not prevent *coordinated* expenditures – whereby funds are spent in coordination with the candidate. *See Stop This Insanity, Inc. Emp. Leadership Fund v. Fed. Election Comm'n,* 902 F. Supp. 2d 23, 43 (D.D.C. 2012).

Nor is it enough to merely state in organizational documents that a group is an independent-expenditure-only group. Some actual organizational separation between the groups must exist to assure that the expenditures are in fact uncoordinated. We therefore decline to adopt the reasoning of the Fourth Circuit in *NCRL III*. There, the Fourth Circuit rejected North Carolina's argument that

make both limited direct contributions and unlimited independent expenditures, keeping the bank accounts for those two purposes separate is simply insufficient to overcome the appearance that the entity is in cahoots with the candidates and parties that it coordinates with and supports."), *with Carey v. Fed. Election Comm'n,* 791 F. Supp. 2d 121, 135 (D.D.C. 2011) ("As long as Plaintiffs strictly segregate these funds . . . they are free to seek and expend unlimited soft money funds geared toward independent expenditures.").

NCRL-FIPE (a similar organization to VRLC-FIPE) was "not actually an independent expenditure committee because it [was] 'closely intertwined'" with NCRL and NCRL-PAC, two organizations (similar to VRLC and VRLC-PC) that did not limit their activities to independent expenditures. *NCRL III*, 525 F.3d at 294 n.8. The Fourth Circuit concluded based only on NCRL-FIPE's organizational documents that the group was "independent as a matter of law."[22] *Id.* We do not agree that organizational documents alone satisfy the anti-corruption concern with coordinated expenditures that may justify contribution limits.

There is little guidance from other courts on examining coordination of expenditures, but we conclude that, at a minimum,

[22] Dissenting from this conclusion, Judge Michael stated that "at any given moment, the same director or staffer is on the one hand ensuring that NCRL–PAC's activities follow a candidate's campaign strategy, while on the other hand 'independently' designing NCRL–FIPE's expenditure strategy to promote that same candidate." *NCRL III*, 525 F.3d 274, 336 (4th Cir. 2008) (Michael, J., dissenting). He concluded that without any organizational separation it was "hard to understand how NCRL-FIPE could, whether intentionally or not, avoid incorporating the coordinated campaign strategies used by NCRL-PAC into its own ostensibly independent campaign work." *Id.*

there must be some organizational separation to lessen the risks of coordinated expenditures. Separate bank accounts and organizational documents do not ensure that "*information* [] will only be used for independent expenditures." *Catholic Leadership Coal. of Tex. v. Reisman*, No. A-12-CA-566-SS, 2013 WL 2404066, at *17 (W.D. Tex. May 30, 2013) (emphasis added) ("The informational wall [that plaintiff] asserts it can raise to keep its independent expenditure activities entirely separate from its direct campaign contribution activities is thin at best. This triggers the precise dangers of corruption, and the appearance of corruption, which motivated the Court in *Buckley* to uphold the challenged contribution limits."). As discussed below, whether a group is functionally distinct from a non-independent-expenditure-only entity may depend on factors such as the overlap of staff and resources, the lack of financial independence, the coordination of activities, and the flow of information between the entities.

The decisions cited by VRLC-FIPE to challenge the district court's conclusion that VRLC-FIPE is not sufficiently separate from VRLC-PC are inapposite. In *Citizens United*, the Supreme Court observed that a corporation's "PAC is a separate association from the corporation." 558 U.S. at 337. But it did so only to emphasize how the challenged statute was "a ban on corporate speech notwithstanding the fact that a PAC created by a corporation can still speak." *Id.* In *Cal. Med.*, the Supreme Court observed that a PAC was not "merely the mouthpiece" of its contributor because the PAC was a "multicandidate political committee" and "receive[d] contributions from more than 50 persons during a calendar year." 453 U.S. at 196. The Court's reliance on these facts supports our conclusion that whether two entities are separate depends on their particular circumstances. The Supreme Court rejected the assertion that a contributor's contributions to a PAC "should receive the same constitutional protection as [the PAC's] independent expenditures."

72

*Id.* at 195. These decisions do not support VRLC-FIPE's position that the facts regarding its relationships with VRLC and VRLC-PC are irrelevant to the constitutional analysis. *See Ala. Democratic Conference*, 541 F. App'x at 936 ("In this as-applied challenge, whether the establishment of separate bank accounts by . . . a hybrid independent expenditure and campaign contribution organization[] eliminates all corruption concerns is a question of fact.")

**III.    Undisputed Facts in the District Court's Evaluation of the Summary Judgment Motions**

The role of the court on a summary judgment motion is "to determine whether, as to any material issue, a genuine factual dispute exists." *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009). VRLC-FIPE did not contest the evidence presented by Vermont or present opposing evidence at summary judgment. Vermont argued "that [VRLC-FIPE] in fact is enmeshed completely with [VRLC-PC], which contributes funds to candidates." VRLC-FIPE apparently "chose[] not to take the fallback position of contesting the factual

showing [Vermont] has made to prove its point," but simply asserted that "its status is cemented as a matter of law" and argued that it is "entitled to judgment as a matter of law regardless of [Vermont's] evidence." *Vt. Right to Life Comm., Inc.*, 875 F. Supp. 2d at 384, 404-05.

The State's summary judgment motion included numerous depositions, financial reports, emails, meeting minutes, and expert reports. Both parties attached statements of undisputed materials facts to their summary judgment motions. In its response brief, the State attached a statement of disputed facts, which contested Plaintiffs' showing. Plaintiffs did not file an opposing statement of disputed facts. Therefore, we, like the district court, consider the factual record undisputed. On the basis of the State's evidence, described below, we agree with the district court that there was no genuine dispute of material fact as to VRLC-FIPE's organizational separation from VRLC-PC.

VRLC-PC is registered with the Federal Election Commission as a federal PAC and was created by VRLC to engage in federal and state campaign activities, including making direct contributions to candidates. It is clearly not an independent-expenditure-only group. VRLC-FIPE offers only two facts to demonstrate that it must be treated as separate from VRLC-PC. One, the organizational documents show that VRLC created two committees, VRLC-PC and VRLC-FIPE. Two, VRLC-FIPE maintains a separate bank account. For the reasons discussed above, these facts alone are not enough to hold that VRLC-FIPE is an independent-expenditure-only group when, based on the State's undisputed evidence, it is otherwise indistinguishable from the non-independent-expenditure-only group, VRLC-PC.

First, the fact that there are two separate bank accounts does not mean the funds were actually treated as separate. An accountant who examined VLRC's, VRLC-FIPE's, and VRLC-PC's

structure and finances for the State described "a fluidity of funds between VLRC-FIPE and VRLC-PC." He found that VRLC transferred funds from VRLC-PC to VRLC-FIPE if VRLC-FIPE lacked the resources to engage in a certain activity. VRLC-FIPE's treasurer testified that the groups use VRLC-PC's money to fund VRLC-FIPE's primary activity of producing voter guides when VRLC-FIPE lacks the funding. Meeting minutes also show that the two groups do not consider their funding streams as distinct. In a 2008 VRLC-PC committee meeting, for example, those present described a joint fundraising goal in combined VRLC-FIPE and VRLC-PC funds. Taken as a whole, the groups' financial history and related documents do not support a finding that there is any operational barrier between VRLC-FIPE and VRLC-PC. [23]

---

[23] We acknowledge that the record does not show that funds from VRLC-FIPE were used for candidate contributions. Nonetheless, the "fluidity of funds" is enough to show that the accounts were not kept sufficiently separate to establish that VRLC-FIPE is an independent group capable of succeeding with an as-applied challenge to contribution limits.

Next is the organizational structure of the groups; here again there is no evidence that VRLC-FIPE is segregated at all from VRLC-PC. Both are committees of the umbrella organization VRLC, which, by itself, would not show coordination, but the State's accountant represented that VRLC has complete control over VRLC-FIPE's and VRLC-PC's structure and finances. The members of both committees are appointed by the president of VRLC with the approval of VRLC's board. The committees share a substantial overlap in membership. They meet at the same time and same place and often discuss important tactical campaign issues with no regard for the separation of the two committees. The Executive Director of VRLC (and its principal official), Mary Hahn Beerworth, is also an *ex officio* member of VRLC-FIPE's committee; she attends VRLC-FIPE and VRLC-PC committee meetings and advises both. The Chair of VRLC-PC, Michelle Morin, is also a member of VRLC's Board of Directors and a member of VRLC-FIPE.

Then there are VRLC-FIPE's actual activities. It appears that VRLC-FIPE's primary purpose is the production of voter guides describing the pro-life positions of candidates in each county in Vermont. This activity, however, is done in concert with VRLC-PC. Together the two groups produce and pay for the guides, which often list both groups as sponsors. VRLC-PC in turn bases its endorsement decisions on these voter guides. Beerworth and Morin then decide whether to provide the candidates that VRLC-PC endorses with access to the organization's support phone mailing list. There is no point at which VRLC-FIPE separates itself from the lines of communication between the candidate, VRLC, and VRLC-PC. At every step of the campaign process, it is completely enmeshed with VRLC-PC.

The 2010 campaign exemplifies the groups' structural melding and absence of any informational or activities wall. In 2010, Beerworth advised Brian Dubie (VRLC-PC has endorsed Dubie in

every election in which he has run), the Republican candidate for Governor, and members of his campaign staff on issues. This same year, the Dubie campaign accepted more than $900 worth of VRLC's support phone lists as an in-kind contribution.

Because VRLC-FIPE chose not to contest the Defendants' Statement of Undisputed Material Facts or its evidence in support of its motion for summary judgment, we – like the district court – are limited to the State's evidence. There is nothing in the record that raises a genuine dispute as to whether VRLC-FIPE operated as an entity apart from VRLC-PC. It relied on funding from VRLC and VRLC-PC when necessary. It was comprised of the same people – including VRLC-PC's own chairwoman. It worked with VRLC-PC on its primary, if not only, project, voter guides. It received its information and advice from the same sources. It met at the same time and place. Uncontroverted, this evidence is sufficient to conclude that VRLC-FIPE is not meaningfully distinct from VRLC-

PC, and affirm the district court's grant of Defendants' summary judgment motion on this issue.

In *Colorado Republican Federal Campaign Committee v. Federal Election Commission*, the Supreme Court rejected the argument that a party's expenditure is coordinated "because a party and its candidate are identical," saying "[w]e cannot assume . . . that this is so." 518 U.S. 604, 622 (1996). Plaintiffs-Appellants ask this Court to follow *Colorado Republican*. Here, however, we do not *assume* that VRLC-FIPE and VRLC-PC are identical; we, like the district court, have examined the undisputed facts and conclude that VRLC-FIPE has presented no evidence to raise a genuine dispute of material fact about its independence from VRLC's non-independent-expenditure-only entity, VRLC-PC.

**IV. Contribution Limits as Applied to VRLC-FIPE**

Those courts that have found contribution limits unconstitutional as applied to independent-expenditure-only groups

have done so on the basis of the holding in *Citizens United* that independent expenditures do not carry the danger that the expenditure will be given as *quid pro quo* for commitments from the candidate. *See, e.g.*, *WRLC I*, 664 F.3d at 143; *NCRL III*, 525 F.3d at 293-95. Such expenditures are not prearranged or coordinated with the candidate. Separate bank accounts alone, however, do not always eliminate coordinated expenditures. Some organizational divide must exist to ensure that the two are separate – that the independent expenditures are truly spent independent of any coordination with a candidate.

VRLC-FIPE is indistinguishable from VRLC-PC, a non-independent-expenditure-only group. As discussed above, this is clear from the total overlap of staff and resources, the fluidity of funds, and the lack of any informational barrier between the entities. We acknowledge, though, that especially with committees that operate with low funding levels, small staff, and few resources, it

81

will be difficult at times to maintain separation among those committees. Nevertheless, in the absence of any opposing evidence here, we have no basis to find that VRLC-FIPE is distinct from the non-independent-expenditure-only organization VRLC-PC.

We have held that the state may impose contribution limits on some groups – groups such as VRLC-PC that directly contribute or coordinate expenditures with campaigns. Where VRLC-FIPE is functionally indistinguishable from VRLC-PC, the same limits may constitutionally apply to it. "The Supreme Court has upheld limitations on contributions to entities whose relationships with candidates are sufficiently close to justify concerns about corruption or the appearance thereof." *Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 696 (9th Cir. 2010); *accord McConnell*, 540 U.S. at 154-55 (upholding limitations on contributions to national parties because "the close relationship between federal officeholders and the national parties, as well as the means by which

parties have traded on that relationship, . . . have made all large soft-money contributions to national parties suspect"); *Cal. Med.*, 453 U.S. at 203 (Blackmun, J., concurring in part and concurring in the judgment) (upholding limitations on contributions to "multicandidate political committees" because their close relationship with candidates and office holders made them "conduits for contributions to candidates, and as such they pose[d] a perceived threat of actual or potential corruption"). It is the requirement of independence – the absence of "prearrangement and coordination" – that alleviates the danger that expenditures will be spent as *quid pro quo* for improper commitments from the candidate. VRLC-PC participates in federal and state elections, makes direct contributions to candidates, and works with campaigns. It is an organization with the type of close relationship to candidates that allows for state disclosure requirements and financial limitations. Where VRLC-FIPE cannot be functionally distinguished from

VRLC-PC, the same concerns apply. Therefore, we agree with the district court that Vermont's contribution limits as applied to VRLC-FIPE are permitted.

**CONCLUSION**

For the reasons given above, we AFFIRM the judgment of the district court in all respects.