14-1714
*Segarra v. Federal Reserve Bank of N.Y.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

—————————

August Term, 2014

(Submitted: April 20, 2015      Decided: September 23, 2015)

Docket No. 14-1714

CARMEN M. SEGARRA,

*Plaintiff-Appellant*,

-v.-

THE FEDERAL RESERVE BANK OF NEW YORK, MICHAEL SILVA,
MICHAEL KOH, JOHNATHON KIM,

*Defendants-Appellees*.

—————————

Before: KEARSE, PARKER, and WESLEY, *Circuit Judges*.

Plaintiff-Appellant Carmen Segarra filed this whistleblower suit against her former employer, the Federal Reserve Bank of New York ("FRBNY"), and three of its employees. The United States District Court for the Southern District of New York dismissed the suit by memorandum-opinion dated April 23, 2014,

and order dated April 24, 2014.  The district court determined, *inter alia*, that Segarra could not maintain claims against FRBNY's employees under the banking agency whistleblower protection statute, 12 U.S.C. § 1831j(a)(2).

We AFFIRM.  Judge Kearse concurs in result only in a separate opinion. Segarra's other arguments are addressed in a summary order filed simultaneously with this opinion.

Linda J. Stengle, Stengle Law, Boyertown, PA, *for Plaintiff-Appellant*.

Thomas C. Baxter, Jr., David Gross, Thomas M. Noone, Federal Reserve Bank of New York, New York, NY, *for Defendants-Appellees The Federal Reserve Bank of New York, Michael Koh, and Johnathon Kim*.

Richard F. Hans, DLA Piper LLP, New York, NY, *for Defendant-Appellee Michael Silva*.

PER CURIAM:

Plaintiff-Appellant Carmen Segarra filed this whistleblower suit against her former employer, the Federal Reserve Bank of New York ("FRBNY"), and three of its employees.  The United States District Court for the Southern District of New York (Abrams, *J.*) dismissed the suit by memorandum-opinion dated April 23, 2014, and order dated April 24, 2014.  The district court determined, *inter alia*, that Segarra could not maintain claims against FRBNY's employees under the banking agency whistleblower protection statute, 12 U.S.C. § 1831j(a)(2).

For the reasons stated below, the judgment of the district court is

AFFIRMED.

## BACKGROUND[1]

On October 31, 2011, the Federal Reserve Bank of New York ("FRBNY")

hired Carmen Segarra as a Senior Bank Examiner.  FRBNY is one of twelve banks

that, along with a Board of Governors, make up the Federal Reserve System.

One of FRBNY's major responsibilities is to evaluate the "'soundness' of banking

organizations by assessing an 'organization's risk-management systems,

financial condition, and compliance with applicable banking laws and

regulations.'"  Spec. App. 2 (quoting Compl. ¶ 26).  Segarra's first assignment

was to examine the Legal and Compliance division of Goldman Sachs; in

particular, her examination focused on Goldman Sachs's conflict of interest

policy and three financial transactions in which the firm had been involved that

had received unfavorable media attention.  She claims that her examination was

hindered by three FRBNY employees: Michael Silva, Michael Koh, and

Johnathon Kim.  Silva was a relationship manager between FRBNY and

Goldman Sachs.  Silva's deputy, Koh, was "embedded on site" at Goldman

---

[1] Unless otherwise noted, the facts are taken from Segarra's First Amended Complaint.

3

Sachs. Joint App. 7.6. Kim worked as the Supervising Officer of the Legal and Compliance Risk Team, and he supervised Segarra during the relevant time period.

On November 1, 2011, Kim instructed Segarra to use a document distributed by the Board of Governors as the basis for her examination of Goldman Sachs's conflict of interest policy. The document entitled "Complex Risk Management Programs and Oversight at Large Banking Organizations with Complex Compliance Profiles" (hereinafter "SR 08-08") notes that "[o]rganizations supervised by the Federal Reserve . . . should have effective compliance risk management programs[,]" Joint App. at 7.10 (internal quotation marks omitted). Segarra's complaint alleges that Goldman Sachs did not provide her with all the documents necessary to evaluate its risk management program and that its employees disclosed to her that it had no firm-wide conflict of interest policy. She contends that Silva expressed serious concerns that Goldman Sachs would "explode" if consumers and clients learned of its utter lack of a compliant conflict of interest policy. Joint App. 7.14 (internal quotation marks omitted). Segarra further claims that Kim and FRBNY failed to ensure that her examination was unimpeded by other FRBNY employees.

On March 21, 2012, toward the end of Segarra's examination, she reported to FRBNY's Legal and Compliance Risk Team, that Goldman Sachs did not have a firm-wide conflict of interest policy that complied with SR 08-08. Kim attended that meeting. She alleges that members of the Legal and Compliance Risk Team agreed that Segarra's finding should be included in FRBNY's annual examination letter to Goldman Sachs. However, on May 15, 2012, Silva and Koh allegedly met with Segarra and "attempted to force her to change the findings of her examination of Goldman." Joint App. 7.27. FRBNY fired Segarra on May 23, 2012.

On October 10, 2013, Segarra filed this suit against FRBNY, Silva, Koh, and Kim. She submitted the First Amended Complaint on December 4, 2013. Segarra's sole federal claim was brought pursuant to the banking agency whistleblower protection statute, 12 U.S.C. § 1831j(a)(2). All Defendants moved to dismiss; in relevant part, Silva, Koh, and Kim (the "Individual Defendants") argued that they were not within the statute's reach of individuals subject to liability. The district court granted Defendants' motion to dismiss, dismissing all of Segarra's claims. The court concluded that Silva, Koh, and Kim were not

subject to liability under § 1831j(a)(2) and declined to exercise supplemental jurisdiction over Segarra's state law claims.

## DISCUSSION

We review *de novo* the district court's decision to dismiss under Federal Rule of Civil Procedure 12(b)(6). *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110 (2d Cir. 2010). "In doing so, we are constrained to accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor." *Id.* at 110–11 (internal quotation marks and alterations omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Segarra argues that the Individual Defendants are subject to liability under § 1831j(a)(2).[2] She submits that Silva, Koh, and Kim fall within the statute's purview because they indirectly performed a service for the Federal Deposit

---

[2] The summary order filed simultaneously with this opinion addresses Segarra's primary contention on appeal that the district court erred by dismissing her complaint against FRBNY.

Insurance Corporation (FDIC), as evinced by Silva's expression of concern that Goldman Sachs's customers would withdraw money from the firm if they knew it did not have a firm-wide conflict of interest policy. [*Id.*] The Individual Defendants respond that the statutory text upon which Segarra relies only reaches FDIC contractors—and Segarra does not plausibly allege that they are FDIC contractors.

In relevant part, the banking agency whistleblower statute provides:

No Federal banking agency, Federal home loan bank, Federal reserve bank, or any person who is performing, directly or indirectly, any function or service on behalf of the [FDIC] may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any such agency or bank or to the Attorney General regarding any possible violation of any law or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety by--

(A) any depository institution or any such bank or agency;
(B) any director, officer, or employee of any depository institution or any such bank;
(C) any officer or employee of the agency which employs such employee; or
(D) the person, or any officer or employee of the person, who employs such employee.

12 U.S.C. § 1831j(a)(2); *see id.* at § 1811.  This statute "was enacted as part of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, and generally provides broad protection to whistleblowers."  *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 383 (7th Cir. 1992).

If an individual is subject to liability under this statute, he or she must be "[a] person who is performing, directly or indirectly, [a] function or service on behalf of the [FDIC]."  12 U.S.C. § 1831j(a)(2).  A plain reading of this language reveals that Congress focused liability on those who work, either directly or indirectly, for the FDIC.  As this Court has alluded to in a prior case, the term "on behalf of" is used to link persons and entities together.  *See Vt. Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 129–30 (2d Cir. 2014).  Congress's use of the phrase "performing . . . [a] function or service," indicates that the link between the FDIC and the individual liable under this statute must be more than mere gratuitous concern about the FDIC.  Thus, the question before us is whether Segarra's allegations create a plausible and sufficient link between the Individual Defendants and the FDIC.  They do not.

In an effort to bring her claim within the statute's text, Segarra argues that the district court should have inferred that the Individual Defendants are subject

8

to liability because the FDIC may benefit in some way from FRBNY's investigation of Goldman Sachs; she also alleges that "Silva expressed alarm about the implications of [the firm's] failure to properly manage conflicts of interest" and stated that FRBNY "possessed information about Goldman that could cause Goldman to 'explode.'"  Joint App. at 7.14 (internal quotation marks omitted) [¶ 57].  Segarra's attempt to bring the Individual Defendants within the statute's ambit is entirely speculative, meritless, and frankly quite silly.  Neither sharing an interest in the financial well-being of a company nor sharing information about that company leads to a reasonable inference that the Individual Defendants, all of whom were FRBNY employees, were performing services for the FDIC.[3]  Segarra's allegations fall far short of plausibly showing that the Individual Defendants were performing a service on behalf of the FDIC, as required under the whistleblower protection statute.[4]

---

[3] Because this case does not require that we rigidly define the subset of individuals that face liability under this statute, we save those difficult questions for another day.

[4] Our interpretation of the statute's text is also supported by the legislative history: "This section amends [§ 1831j(a)(2)] of the [Federal Deposit Insurance] Act by including FDIC contractors in the whistleblower protections of such section."  H.R. Rep. No. 103-103(I), at 36 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3040, 3052; *see also* Resolution Trust Corporation Completion Act, Pub. L. No. 103-204, 107 Stat. 2369 (1993) (Sec. 21).

## CONCLUSION

For the foregoing reasons and for the reasons stated in the simultaneously filed summary order, the judgment of the district court is AFFIRMED.

KEARSE, Circuit Judge, concurring:

I concur in the result.